# Wytheville

## NELLIE B. DALGARNO v. HARVEY A. BAUM.

June 22, 1944.

Record No. 2812.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Son,* for the appellant.

*L. B. Cox,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

Harvey A. Baum instituted this suit against his six brothers and sisters for partition of a 180-acre farm. The facts are:

In 1889, William A. Jackson and his wife conveyed a 180-acre farm in Norfolk county to Penelope J. Baum, the mother of complainant and respondents, for life, with remainder to her children. She and her children lived on this property several years. A fire destroyed the dwelling. Harvey A. Baum advanced or caused to be advanced $2,500 for the purpose of erecting a dwelling house on the farm. A note for this amount was executed by Penelope Baum, payment of which was secured by a deed of trust on the farm, signed by the life tenant and six of the seven children. In 1937, an additional $1,000 was needed to erect a new barn. Harvey A. Baum advanced the $1,000 used for this purpose and took a note from his mother for $3,500, which included the original $2,500 indebtedness and the $1,000 advanced for building the barn. Payment of this note was secured by a new deed of trust on the 180 acres of land signed by the life tenant and all seven of the remaindermen. Penelope J. Baum died in August, 1942.

Five of the respondents, by testimony and answers to the bill, admitted that the $3,500 had been used with their approval and consent for the permanent improvements on the farm while it was in the possession of and used for the benefit of the life tenant, and that the obligation was a proper charge upon their interests in the property.

Nellie B. Dalgarno, one of the seven children, filed an answer and cross-bill, in which she declared that, while it was true that the deed of trust securing the payment of her mother's note for $3,500 was a valid lien upon the 180 acres, her mother owned at the time of her death another tract of land containing 20 acres which she had devised to Harvey A. Baum, that the $3,500 debt should be paid out of the proceeds of the sale of the 20-acre tract, and that the lien on the 180 acres should be exonerated *pro tanto* out of the net proceeds of such sale. From an adverse decree, she obtained this appeal.

The question presented is whether one of several remaindermen, in a suit for partition instituted after the death of the life tenant, may recover compensation for permanent improvements made upon the common property, with the knowledge and consent of the other remaindermen, during the existence of the preceding life estate.

■■ The general rule is that a joint tenant who, at his own expense, places permanent improvements upon the common property is entitled in a partition suit to compensation for the improvements whether the co-tenants assented thereto or not. Such compensation is allowed not as a matter of legal right but purely from the desire of a court of equity to do justice and to prevent one tenant from becoming enriched at the expense of another. In the absence of consent, the amount of compensation is estimated by and limited to the amount by which the value of the common property has been enhanced. *Ballou* v. *Ballou,* 94 Va. 350, 26 S. E. 840, 64 Am. St. Rep. 733; *Roark* v. *Shelton,* 169 Va. 542, 194 S. E. 681.

■ The same reasons apply to a case where one remainderman, at his own expense, has placed permanent improvements upon the common property during the possession of the life tenant. While no Virginia case is cited on the point, the rule has been applied to such remaindermen in West Virginia and other States. *Ward* v. *Ward,* 40 W. Va. 611, 21 S. E. 746, 52 Am. St. Rep. 911, 29 L. R. A. 449; *Shipman* v. *Shipman,* 65 N. J. Eq. 556, 56 A. 694; 40

Am. Jur. 34; annotations in 1 A. L. R. 1192 and 122 A. L. R. 236.

In the light of the foregoing principles, the only debatable question presented is the amount of compensation to be allowed; that is, whether Harvey A. Baum is limited in the amount of his recovery for improvements to the difference between the present value of the farm with improvements and the present value of the farm without the improvements, or whether he is entitled to recover as compensation the total cost of the improvements at the time they were made.

In *Ballou* v. *Ballou, supra,* this is said: "A co-tenant cannot recover (in an action of *assumpsit*) from his fellow tenants a share of the expense incurred by him in making improvements upon the common property, in the absence of an express assent on their part, or of such circumstances or dealings between the parties as will convince the court that an understanding existed to the effect that the expenses were to be repaid. * * * The right to claim compensation for improvements made under the circumstances disclosed by the record does not arise until the suit for partition is brought, and the right to partition arises whenever the parties may choose to assert it."

The facts and circumstances under which the improvements were made in the present case clearly indicate that the parties not only expressly agreed for Harvey A. Baum to make the expenditures for the improvements, but they specifically charged their interests in the common property with the total cost of such improvements.

The record discloses that there was no dwelling on the farm in 1922. It could not be occupied, as it had been, as the home for the life tenant and her children. The farm could not be rented to an advantage. The life tenant was a widow with little or no assets other than her life estate in the 180 acres of land. It was the moral, if not the legal, duty of each of the seven children to support their mother. Harvey A. Baum, when quite young, assumed this responsibility and acted as a father towards his brothers and sisters.

He contributed $100 a month towards the support of his mother and approximately $50 a month to the support of his sister, Nellie B. Dalgarno, until she was married.

These were the circumstances under which the brothers and sisters agreed that the dwelling should be erected and that Harvey A. Baum should advance the $2,500 for the construction of the building on the common property. Six of the seven children transferred their respective interests in the farm to a trustee to secure the payment of this sum. While it is true that the mother alone signed the note, she made no attempt to pay interest or any part of the principal. When the parties decided that a barn was necessary, they again agreed that Harvey A. Baum should advance $1,000 on the cost, and all seven of the parties signed another deed of trust on the common property securing the payment of the two obligations. The mother, during the five years she lived after this last note was executed, paid no interest nor any part of the principal. During the whole of the twenty years that Harvey A. Baum contributed to the support of his mother, it was never suggested that a part of this money be used in curtailing this obligation. On the contrary, she bought the twenty acres of land of which she died seized and possessed with the money that her son, Harvey A. Baum, sent her for her support. The only reasonable inference that can be drawn from the circumstances disclosed by the record is that all parties intended that the $3,500 debt incurred for improvements should be a charge upon the land and should be paid out of the proceeds of the sale.

While the will of Penelope J. Baum directs that her "just debts be paid" and makes the payment of her current indebtedness and burial expenses a specific charge on the 20 acres devised to Harvey A. Baum, it is quite evident that she did not regard the obligation for improvements due Harvey A. Baum as a current debt.

The decree of the trial court is affirmed.

*Affirmed.*