# Richmond

## J. Landreth Shotwell v. Vernon E. Shotwell.

April 24, 1961.

Record No. 5226.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*James S. Easley* and *Frank M. Slayton (Easley and Vaughan,* on brief), for the appellant.

*W. G. Vansant* (*Thomas F. Hairston*, on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

This is a partition suit brought by Vernon E. Shotwell against his brother, J. Landreth Shotwell, under the provisions of Code, § 8-692.[1]

The suit seeks the partition of a 156-acre farm in Pittsylvania County formerly owned by James C. Shotwell, father of the litigants. Vernon Shotwell (hereinafter called Vernon) owns a ⅛th interest in the farm, and Landreth Shotwell (hereinafter called Landreth) owns a ⅞ths interest, having acquired the shares of six of his brothers and sisters at the price of $1250 per share.

The chancellor referred the cause to a commissioner in chancery who was directed to inquire and report to the court on the following questions which are here material: (a) Whether the said real property is susceptible of a convenient and judicious partition in kind among the owners thereof in one of the modes prescribed by law; and if not (b) whether any one or more of the owners would be willing to take the whole property and pay to the others such sums of money as their interests may entitle them to; and if not (c) whether the interest of those who are entitled to the subject or its proceeds will be promoted by a sale of the entire property and a division of the proceeds according to the respective rights of the parties; (d) an accounting of the rents and profits from said land since the death of James C. Shotwell; and (e) any other matter not specifically stated which the commissioner may deem relevant, or any of the parties may require.

After due notice, and after hearing the testimony of witnesses the commissioner filed his report stating:

[1] "8-692. *Allotment to one or more parties, or sale, in lieu of partition.*—When partition cannot be conveniently made, the entire subject may be alloted to any one or more of the parties who will accept it, and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or in any case in which partition cannot be conveniently made, if the interest of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be an infant or insane person, may order such sale, or an allotment of a part thereof to any one or more of the parties who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to, and a sale of the residue, and make distribution of the proceeds of sale, according to the respective rights of those entitled, * * *."

For a history of Code, § 8-692 and the reasons for its enactment see Minor on Real Property, 2nd Ed. (Ribble), Vol. Two, § 896, page 1141.

The property mentioned in the bill "is not susceptible of a convenient or judicious partition in kind among the owners thereof in one of the modes prescribed by law;" "that no one or more of the owners would be willing to accept the whole property and pay to the others such sums of money as their interests may entitle them to;" "that the interest of those who are entitled to the subject or its proceeds will be promoted by a sale of the entire subject property and a division of the proceeds according to the respective rights of the parties."

The commissioner further reported, "that Vernon E. Shotwell, plaintiff, who owns a ⅛ undivided interest in the subject land, filed with your commissioner in this cause an offer in writing to purchase the ⅞ undivided interest owned by J. Landreth Shotwell at the price of $17,500, to be paid in installments. This may be considered an offer to accept the whole property; however, your commissioner is unable from the evidence in this cause to find and determine with any reasonable degree of certainty that the said offer is made at a fair price, * * * and your commissioner is of the opinion and so reports that the value of the property can only be determined to the best interests of the parties by a sale thereof at public auction."

As to the question dealing with rents and profits, after reviewing the evidence, the commissioner reported that Vernon was entitled to $159.87 for the year 1958.

In the proceedings Landreth introduced evidence concerning his claim for reimbursement for the improvements which he had allegedly made to the freehold. As to this, the commissioner reported that Landreth lived upon and farmed the subject property for a number of years while the same was owned by his father, J. C. Shotwell who died intestate December 17, 1949, leaving eight children to whom the property descended. Landreth continued to live on and operate the farm from the time of the death of his father in 1949 until the present date, during all of which time he occupied the premises as a tenant, paying one-fourth of the proceeds less one-fourth of the expenses as rent; that the evidence shows that Landreth, while a tenant in common of the property also occupied the relation-- ship of tenant and landlord; "that such repairs as he made upon the property and improvements he may have placed thereon were mainly for his own personal gain and benefit; and that he is not entitled to enforce any claim therefor in this cause (see 40 American Jurisprudence, pp. 33, 34; Partition, § 41.)"

Landreth filed exceptions to the commissioner's report as follows:

1. To the finding that the land could not be partitioned in kind, and

2. To the failure of the commissioner to allow him $6,330 for repairs and improvements to the property.

Vernon also excepted to the report on the grounds that:

1. The commissioner should have recommended the acceptance of his (installment) offer of $17,500 for Landreth's ⅞ths interest in the property; and

2. The commissioner should have required Landreth to account for the rents from the property for the years 1950 through 1957.

On April 21, 1960, the chancellor entered a decree overruling all exceptions to the commissioner's report "other than the exception of the defendant (Landreth) on the question of partition in kind, and the court being of the opinion that there is insufficient evidence before it at this time to determine whether or not the land described in the papers in this cause is not susceptible of a convenient division in kind, the court doth hereby sustain the defendant's exception in that respect."

Whereupon the court appointed five commissioners for the purpose of going upon the property "and if practicable to do so, to lay off and divide said tract of 156 acres into two parts, one of said tracts to contain ⅞ interest in value and assign the same to J. Landreth Shotwell, and the other part to contain ⅛ interest in value and assign the same to Vernon E. Shotwell."

On May 10, 1960, the five commissioners reported as follows:

"1. The 156-acre farm * * * does not lend itself to be divided in kind on the basis of ⅛-⅞ interests.

"2. The above mentioned tract does not lend itself to be divided in kind and money.

"3. Taking into account timber, buildings, tobacco allotment and all other factors embracing the value, we do hereby assign the value of $21,500.00 to be a fair and just value of the 156-acre farm as a whole."

Upon the receipt of this report Vernon offered to purchase Landreth's ⅞ths interest at the value fixed by the commissioners, $21,500, and Landreth offered to purchase Vernon's ⅛th interest at the same valuation, but Landreth says in his petition "in this offer defendant (Landreth) is insisting upon his claim for reimbursement for the permanent improvements built by him and at his ex-

pense." However, the quoted condition was abandoned in the oral argument before us.

Whereupon, on July 7, 1960, the chancellor entered a decree refusing to allot the entire subject to either of the parties, and holding that as no exceptions had been filed to the report of the commissioners to the effect that the land was not susceptible of division in kind "the court doth hereby confirm and approve said report", and "it further appearing to the court that the interests of those entitled to the subject or its proceeds will be promoted by a sale of the entire land and a division of the proceeds, the court doth so decide."

From this decree Landreth appeals.

While Landreth assigns four errors, he only asserts the following: (a) That the court erred in refusing to accept his offer to purchase his brother's ⅛th interest in the land on the basis of the $21,500 valuation; (b) the court erred in its decree in compelling the sale of the entire property in order to divide the proceeds in money; and (c) the court erred in refusing to grant to the defendant credit for buildings and other improvements made by him.

As to the first assignment that the court erred in not accepting his offer to purchase the ⅛th interest of Vernon upon the basis of the value established by the five commissioners ($21,500), it will be remembered that this offer was conditioned upon his claim for reimbursement "for the permanent improvements built by him" on the property, which he estimated to be $6,330.

Vernon offered to purchase the property at the price fixed by the commissioners ($21,500) without condition. The court held that under the circumstances the allotment should be made to neither.

A similar question was raised in *Thrasher* v. *Thrasher* (decided March 6, 1961), 202 Va. 594, 604, 118 S.E. 2d 820, 826, where we said:

"Appellants assigned error to the court's denial of their motion that the land be allotted to them and they be allowed to pay to the others for the value of their interests, pursuant to Code, § 8-692. The motion was made two days before the final decree. On the date of the decree Robert Guy Thrasher and the successors in title of Daniel Leroy Thrasher filed a similar motion asking that the tract be allotted to them. The court found, as stated, that it should be allotted to neither group. There was no error in that ruling. The language of the allotment provision is permissive and its exercise rests in the sound discretion of the court. In this case it is not shown

that the court should have honored the request of one group over that of the other, or that the request of either should have been granted."

See also *Billings* v. *Billings,* 114 Vt. 512, 169 A.L.R. 855, 49 A. 2d 179; Anno. 169 A.L.R. 862; 14 Mich. Jur., Partition, § 19, pp. 155, 156; *Corrothers* v. *Jolliffe,* 32 W. Va. 562, 9 S. E. 889, 25 Am. St. Rep. 836.

There is no merit in this assignment.

■ Landreth next complains that the court erred in compelling the auction sale "of the entire property in order to divide the money into ⅛ th for the plaintiff and ⅞ ths to the defendant."

The commissioner in chancery and the special commission of five citizens reported to the court that the land was not susceptible of division in kind. The record shows that the farm has upon it valuable timber, is entitled to a substantial tobacco allotment, and other factors which would make a division in kind impracticable. This is nowhere controverted by the evidence, and the report of the five commissioners to the effect that the land could not be divided in kind was not excepted to and thus became final.

■ The remaining assignment of error deals with the court's decree denying Landreth credit for the alleged improvements placed upon the property. It is true that as a general rule a joint tenant who at his own expense places permanent improvements upon common property is entitled in a partition suit to compensation for the improvements. This is so, whether his cotenant agreed thereto or not. Compensation of this kind is allowable not as a matter of legal right but purely as a desire of a court of equity to do justice and to prevent one tenant from becoming enriched at the expense of another. However, in the absence of consent on the part of the cotenant the amount of compensation is limited to the amount by which the value of the common property has been enhanced. *Dalgarno* v. *Baum,* 182 Va. 806, 808, 30 S. E. 2d 559, 560.

The chancellor, in a well-reasoned opinion, had this to say:

"There must be some burden on the person claiming such reimbursement to prove the actual construction of the improvements, and second, to show the amount by which the value of the common property is enhanced. * * * In the case at bar, the respondent, J. Landreth Shotwell, has not shown such proof. In fact his proof as to the improvements themselves is very vague and indefinite. He admits that some of the improvements were made from time to time

during a ten year period and during which time he was a renter, paying rent to his mother, and in 1958 paying one-fourth to his brothers and sisters. He says during the period of ten years he 'built shelters, garage shelter, wood house shelter, stable, two room basement to main house,' and wire fences, and in the spring built two rooms to the house. There is some evidence that he used timber off of the farm to do this construction. He says he can't tell how much the improvements cost though he said he had statements at his home. There has been an estimate of costs by two witnesses, but there is a wide variation as to the values. There is absolutely no evidence offered as to the enhancement in value to the common property. For these reasons the court feels that the commissioner's findings in this respect should not be disturbed * * *."

We are in accord with the views expressed by the chancellor.

Finding no error in the decree complained of the same is

*Affirmed.*