## CIRCUIT COURT OF ORANGE COUNTY

Kathy D. Trueman

v.

Catherine A. Dougherty

January 12, 2006

Case No. (Chancery) CH03-000152

BY JUDGE DANIEL R. BOUTON

I set forth below the rulings of the court in connection with the above referenced case.

This matter comes before the court based on a dispute between two tenants in common who hold equal undivided interests in a jointly owned parcel of real property. The primary dispute is whether either or both of them are entitled to any equitable relief in connection with the proceeds that will be generated from the sale of the property.

An ore tenus hearing was conducted on October 27, 2005. Subsequently, counsel submitted written arguments in support of their respective positions regarding the issues that were in dispute at the trial.

*Analysis*

There is some authority in Virginia to support the argument that a co-tenant is entitled to seek a contribution or an offset from another co-tenant in cases where the court orders the sale of commonly owned property in a partition suit. First, the case of *Grove v. Grove*, 100 Va. 556, 42 S.E. 312 (1902), vests trial judges with the discretion to consider establishing an equitable lien in favor of one co-tenant for contributions made by such tenant. The *Grove* court limited the court's authority to payments that are applied to the purchase price or to encumbrances that attach to the common property. As

stated by the Supreme Court of Appeals of Virginia: "If one of the co-tenants has paid more than his just share of an incumbrance on the common property or has advanced more than his proportion of the purchase money, the court may decree that payment of the excess be made to him and in default of such payment, that the moiety of the tenant in default may be sold to satisfy the amount equitably due from it." *Id.*, at 560.

The second means of potential relief available to a co-tenant is to seek recovery for improvements that are made to commonly owned property at the sole expense of such tenant. The rationale for this theory is not based on any "legal right" but is premised on the "desire of a court of equity to do justice and to prevent one tenant from becoming enriched at the expense of another." *Shotwell v. Shotwell*, 202 Va. 613, 618, 119 S.E.2d 251 (1961). However, it is important to note that a co-tenant is not entitled to receive compensation for the cost of the improvements or to the specific amount of funds advanced to pay for them. Rather, if proven by competent evidence, the recovery available is "limited to the amount by which the value of the common property has been enhanced." *Dalgarno v. Baum*, 182 Va. 806, 808, 30 S.E.2d 559 (1944).

In light of the above principles, the court will now address the evidence in the present case. The respondent asserts that she has paid far in excess of one-half of the mortgage payments and far more than one-half of the costs of any improvements that were arguably made to the common property during the time that it was owned by the parties. At trial, she produced copies of cancelled checks that represent mortgage payments for several years. She also testified that, in 2001, she made a final payment of $8,648.37 to satisfy in full the outstanding balance of the mortgage. She further testified at length regarding many other expenses that were paid by her in connection with the property. Moreover, the respondent stated that, while she and the complainant shared the residence on the property, she earned far more money than the complainant. As a consequence, her position is that the evidence proves that she was primarily responsible for the financial obligations of the commonly owned property and the household. The respondent further testified that she was personally responsible for approximately ninety percent of the payments on the mortgage. Based on all of the evidence, she asserts that she is entitled to a contribution or an offset in this amount from the proceeds of the sale of the property. The computations that she relies on in support of her request are set forth and explained in the written arguments submitted by Ms. Harris. (November 17, 2005, Letter, pp. 5-6.)

At the same time, however, the respondent concedes that the complainant did make some of the mortgage payments. In this regard, for many of the years when the property was occupied by the parties, the

respondent supplied no cancelled checks or documentation to prove that she made the mortgage payments. The respondent also acknowledges that the complainant contributed money to a number of household bills and debts that were incurred in connection with the property.

For her part, the complainant does not dispute that the respondent made many of the mortgage payments that were due to the bank. She also concedes that the respondent made the final payment of $8,648.37 to satisfy in full the balance of the mortgage. She testified, however, that she reimbursed the respondent for her share of the monthly mortgage payments on a regular basis. According to her, when she made these payments during the time that the parties shared the residence on the property, the funds were delivered directly to the respondent. The complainant also stated that there were times when she made the mortgage payments directly to the lender. The position of the complainant is that the evidence proves that she paid for approximately fifty percent of the mortgage and fifty percent of all of the other expenses associated with the property.

In resolving the dispute presented by the facts summarized above, the court accepts as credible the testimony of the complainant regarding the financial arrangements between the parties. The court thus finds that she contributed funds for the mortgage payments and for household expenses that were approximately equal to the payments that were made by the respondent. The court believes that the complainant regularly gave money to the respondent, as she stated at trial. Notwithstanding this finding, it should be noted that, with the exception of the final payment made by the respondent, the evidence is insufficient for the court to compute the specific amounts that were paid by each of the parties. During the many years that they resided together, they shared the financial responsibilities of their commonly owned property on an informal basis. Their method of doing business lacked precision. Each paid different bills at various times and each on occasion took turns paying the same obligations. The testimony and the exhibits introduced at trial lead the court to conclude that their financial contributions were relatively equal. The only exception to this finding lies in the final mortgage payment in the amount of $8,648.37.

As a result of the above, the court finds that *Grove* does not support the respondent's request for the relief that she seeks based on her claim that she paid approximately ninety percent of the mortgage. To begin with, the evidence relied on in *Grove* can be distinguished from the evidence in the case before the court. Specifically, the co-tenant in *Grove* whose share was subjected to an equitable lien by the court was insolvent and paid no portion of the purchase price. There was no dispute that the co-tenant contributed

nothing to the payment of the purchase price or to any of the liens on the property. The evidence established that all of the funds were provided by the other co-tenants. As a result, the equities to be adjusted between the co-tenants in *Grove* regarding their respective financial contributions were compelling and clearly proven by the evidence. Here, as previously discussed, the court finds that except for the final mortgage payment made by the respondent, the parties made relatively equal contributions to the purchase price and to the encumbrance.

It is also important to note that *Grove* can be distinguished from the present case in another significant way. Specifically, the co-tenants in *Grove* who sought and obtained in their favor an equitable lien from the other co-tenant premised their claim on an express agreement among the parties. They alleged that the co-tenant from whom contribution was claimed was conveyed a one-third interest in the title to the property on condition that he pay in full one-third of the purchase price. Here, there is no evidence of any express or implied agreement between the parties for the payment of the purchase price or the mortgage. When questioned at trial, the respondent conceded that she had no formal agreement with the complainant; she also admitted that during the time that they were together, they never had any arguments or disputes over the payment of any financial obligations. Similarly, the complainant never asserted that she was acting under any express agreement with the respondent; she said that the bills were paid by both of them and that she consistently reimbursed the respondent for her share.

Nevertheless, the court does find that *Grove* provides some support for the position of the respondent as it pertains to the final payment of the mortgage in the amount of $8,648.37. The case of *Jenkins v. Jenkins*, 211 Va. 797, 180 S.E.2d 516 (1971), constitutes additional authority for the court's decision on this issue. In *Jenkins*, a husband and wife whose residence was jointly titled during their marriage became the owners of the property as tenants in common upon their divorce. The former husband filed a bill seeking partition of the property and the former wife sought contribution from him for his one-half share of the mortgage payments that were made by her following the entry of the decree of divorce. She also argued that she should be responsible for only one-half of the unpaid real estate taxes that had accrued against the property since the date of the final divorce decree.

The trial court upheld the finding of the commissioner in chancery, who concluded that the former husband's spousal support payment should have been applied to the mortgage. The trial judge also found that the contribution for taxes sought from the former husband by the former wife were subject to an offset against her for rent that she should have paid due to her occupancy of

the premises. The end result was that the former wife received no credit from the trial judge for the mortgage payments or for her share of the real estate taxes.

The Supreme Court of Virginia reversed the trial court. First, the court noted that the husband never sought any rent from his former spouse nor did he make any claim for it in the partition suit. Thus, no offset for rent should have been applied to reduce the former husband's fair share of the accrued taxes. Second, the court held that the divorce decree imposed no requirement on the wife to pay the mortgage. Thus, the spousal support payments were hers to spend as she saw fit. Most important, the Supreme Court of Virginia held that the wife was entitled to a credit for the mortgage payments that she had made and that she was only responsible for one-half of the delinquent taxes that had accrued. In ruling this way, the court relied directly on the rationale of *Grove*, finding that "each co-tenant should be ratably responsible for taxes and other liens against the property." *Id.*, at page 800.

A careful reading of *Jenkins* and *Grove* reveals that the court may exercise its equitable power to adjust the rights among co-tenants of commonly owned property when sufficient evidence has been introduced to justify granting relief in connection with the purchase price or encumbrances that attach to the property. In this regard, the evidence in *Jenkins* established clearly that all of the disputed mortgage payments were satisfied in full by the former wife. There was no evidence to prove or even suggest that the former husband had contributed to these payments. *Grove* was similar in that the evidence proved that one co-tenant contributed nothing to either the purchase price or to the discharge of any liens. In short, in *Grove* and *Jenkins*, the equitable power to require an offset or a ratable contribution from a co-tenant was supported by compelling, undisputed evidence.

Based on the above discussion of *Grove* and *Jenkins*, the court finds that the equitable considerations surrounding the final mortgage payment in the present case favor the respondent. The undisputed evidence is that the respondent made this payment in full and that the complainant contributed nothing to this amount. As a result, the court finds that the respondent is entitled to receive credit from the sale proceeds in the amount of one-half of the final mortgage payment ($8,648.37 divided by 2 equals $4,324.19).

It should be noted in this context that the court does not find persuasive the complainant's argument that any relief should be premised on the timing of the claim; the court also rejects the assertion that a co-tenant must provide some sort of notice that a claim is being made before the court is entitled to give consideration to an offset or an equitable lien. Moreover, the legal obligation or liability, if any, that Bertha H. Trueman might have for the

payment of the promissory note secured by the encumbrance against the property would have no significant impact on the court's analysis. Rather, in any case of this type, the question of whether the court should exercise its discretion turns on whether there is adequate proof to establish that one co-tenant has paid more than his fair or agreed upon share of the purchase price or any encumbrance. Here, as previously stressed, such proof has been sufficiently established in connection with the final mortgage payment made solely by Ms. Dougherty.

The court will next address the issue of improvements to the property. At trial, both parties offered testimony and submitted exhibits to prove that each of them contributed funds to improve the property. Moreover, there was evidence that the fair market value of the property was not in dispute. Nevertheless, the record is devoid of evidence to establish that the value of the property was increased by a specific amount because of improvements that were made at the expense of either of the co-tenants. Thus, no proof of any damages based on the measure that applies has been adduced. As a result, consistent with the principle articulated in *Dalgarno* and subsequently cited and followed in *Shotwell, supra*, neither co-tenant is entitled to any relief for the improvements to the home.

The final issue that the court will address pertains to the contributions that were made by the co-tenants after they terminated their relationship and vacated the property. On this point, evidence was introduced to establish that each co-tenant contributed funds to the maintenance of the residence and to pay the obligations associated with the property. Nevertheless, consistent with the court's view of how the parties arranged their finances, no reliable conclusion can be drawn regarding the specific amounts that were paid by each of them. Thus, equitable considerations do not favor a recovery for either one of them. Moreover, it should be noted that the court is not aware of any authority that would vest trial judges with the discretion to grant any relief for routine expenses that are associated with the maintenance of the property. The existing cases support a request for recovery only where there is an established encumbrance for which a court of equity should compel a contribution from a co-tenant who has not paid his or her fair share, where one co-tenant has paid more than his or her fair share of the purchase price of the commonly owned property, or where one co-tenant has paid for improvements that resulted in an increase to the fair market value of the commonly owned property.

Based on the court's analysis, the only relief that will be awarded in this case will be to the respondent for the final mortgage payment; the amount will be computed as set forth above. Moreover, now that the court has resolved the disputed issues based on the evidence that the parties presented at trial, the

court will address Mr. Gayheart's motion that the court reopen the case and receive additional evidence. At the same time, the court will give equal consideration to Ms. Harris's response to the motion. First, the court denies the motion to receive additional evidence. Second, the court has evaluated all of the factors that must be taken into account in determining whether any sanctions should be invoked pursuant to Va. Code § 8.01-271.1 of the Code of Virginia. The motion for any sanctions is denied.

Mr. Gayheart shall prepare an order that sets forth the rulings of the court. The language of this letter opinion should not be repeated in the order; rather, it should be incorporated by reference. The order should include a provision stating that the case shall remain on the court's docket for further proceedings in connection with the sale that has been ordered. All exceptions of counsel to the rulings of the court are noted and preserved, and the order may be endorsed in any manner deemed appropriate. The endorsed order shall be submitted by February 10, 2006.

### Further Proceedings in the Case

Once the order required by the rulings set forth in this letter opinion has been entered, the case can proceed to a final resolution. In this regard, the parties concede and the court finds that partition in kind of the property is not convenient. Moreover, neither party requests allotment; therefore, the court orders that the property be sold and that the net proceeds be divided between the parties in a manner that is consistent with this letter opinion.

In accordance with Va. Code § 8.01-96, Mr. Gayheart and Ms. Harris will be appointed as special commissioners to conduct the sale that has been ordered by the court. They should confer with one another to see if an agreement can be reached regarding the method of sale. In the event that the parties agree on how they would like the sale to proceed, a proposed order that sets forth the necessary steps that must be taken to complete the sale can be submitted. However, the court emphasizes that the proposed order regarding the sale is separate and apart from the order required by this correspondence. Any discussions about the method of sale should not delay the submission of the order from the hearing of October 27th. Furthermore, in the event that the parties are unable to agree on an order that provides for the manner in which the proposed sale will occur, the court will conduct a short hearing on the question.