# Richmond

Louis F. Everett v. Clara L. Bodwell, Adm'x, Etc.

June 10, 1946.

Record No. 3063.

Present, All the Justices.

The opinion states the case.

*Edmund S. Ruffin and Sons* and *Jas. G. Martin & Son*, for the appellant.

*Michael B. Wagenheim*, for the appellee.

HOLT, J., delivered the opinion of the court.

Louis F. Everett is the owner of a house and lot in Norfolk, whose number is 2604 Ballentine Boulevard. In its first floor he conducted a business known as the "Louise Luncheonette". On September 11, 1944, he leased its first floor to Phillip R. Bodwell at $40.00 a month. On the same day he sold that business to the lessee for $3,300.00 who paid thereon $500.00 in cash and executed a note for $2,800.00 for chattels, etc., purchased and conveyed. The lessee was to pay $100.00 a month on account of his purchase. He made thereon two payments of $100.00 each, but was killed in an accident on December 24, 1944. This sale was evidenced by a deed of bargain and sale which was not recorded until December 27, 1944. The deed itself was drawn up by the lessor's counsel, Mr. E. C. Powell. Before it was executed Everett discussed this matter with his lawyer, and on said date he and the purchaser met by agreement in this lawyer's office. He there introduced this purchaser to his counsel, where they discussed the sale and its terms. Counsel suggested that the unpaid balance should be in some manner secured, and drew up a deed of trust to that effect. It was not satisfactory and was "scrapped" by agreement of both the vendor and vendee. He then drew up a bill of sale or chattel mortgage. That too was not satisfactory and it also was "scrapped". He then drew up a deed of bargain and sale which set out the price agreed upon, $3,300.00, recited that $500.00 had been paid in cash and that the remaining $2,800.00 was to be paid at the rate of $100.00 a month, and nothing more relative to the issue here. It was satisfactory to and was then executed by both Everett and Bodwell. This plan as adopted was against the original advice of counsel.

The reason that this transaction took this form was that Mr. Bodwell had no capital and might have had difficulty in obtaining necessary supplies to carry on his business if a lien such as was first suggested was placed upon record.

In the course of Mr. Everett's examination he was asked:

"Q. And if the paper had been put on record which you now claim is a lien on the fixtures, the creditors would have been extremely reluctant to extend him credit, would they not?

"A. I went to the creditors who formerly credited me and advised them he had taken over and advised of the chance of extending of too much credit, such as Hoffman Cigar Company and the Old Dominion Tobacco Company."

By agreement between the parties it was understood that the vendor retain the lien for the balance due him, but also by agreement between them there was no record evidence of this lien and there was no written evidence of it at all. Bodwell did not want it because it might prevent credit to him from those who might furnish supplies, and Everett did not want it because if Bodwell could not obtain the necessary supplies he could not pay him the $100.00 a month, promised on account of the purchase price. Plainly the withholding of any record of the lien suggested was a fraud upon those who sold supplies to Bodwell, if against them the verbal vendor's lien which the parties both agreed upon could be enforced. It is against these creditors that this vendor is asking the aid of a court of equity in the enforcement of a secret and unrecorded lien.

He is confronted with this unsurmountable obstacle. He who comes into equity for relief must come with clean hands.

It would be a work of supererogation to buttress with authorities this fundamental principle. There was no mistake, mutual or otherwise. This deed of bargain and sale was perfectly unambiguous. It is true that the parties thought that by keeping this lien off the record Bodwell might obtain credit for supplies necessary in his business, and Everett thought that if Bodwell could obtain this credit

the business might prosper and he might be paid the purchase price. In any event the vendor won. If the business was prosperous of course he would be paid, and if it failed he held a claim superior to those creditors of Bodwell's who had furnished him supplies.

In *Hunt v. Rousmaniere's Adm'rs,* 1 Pet. (26 U. S.) 1, 7 L. Ed. 27, is this headnote sustained by the opinion:

"Where parties deliberately agree not to secure a debt by mortgage, but to give and receive a power of attorney authorizing the creditor to sell certain property of the debtor, and apply its proceeds to the payment of the debt, and the power is annulled by the death of the debtor, a court of equity will not direct a new security to be given, or fix a lien on the property as security for the debt, though satisfied that the parties acted in ignorance of that rule of law which makes the death of the constituent a revocation of the power."

In *Fix v. Craighill,* 160 Va. 742, 169 S. E. 598, it is said:

■ "Mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk are not such mistakes as entitle either party to relief."

See also, Merwin on the principles of Equity and Equity Pleading, pp. 238, 239 and 240.

■ There was no innocent mistake and no mistake at all. The parties upon mature deliberation made a deliberate contract. It is not for the court of equity to make another contract for them which would work a fraud upon other parties interested. The judgment of the court below is plainly right and should be affirmed.

*Affirmed.*