# CIRCUIT COURT OF THE CITY OF ROANOKE

Claudia Richardson Stover

v.

Larry Stephen Stover

v.

Virginia Department
of Social Services,
Division of Child
Support Enforcement

v.

Melissa Dawn Stover,
an infant, by her
guardian ad litem,
V. Anne Edenfield

July 3, 1990

Case No. CH730003090–01R and CH74003793
Hustings Court Case No. 71CH9850

BY JUDGE CLIFFORD R. WECKSTEIN

For more than a decade and a half, Larry Stephen Stover has been under court order to pay support for Melissa Dawn Stover (now Melissa Dawn Ramsey). He consistently has failed and refused to pay as ordered. As a result of his lack of payment, the Division of Child Support Enforcement of the Commonwealth of Virginia (DCSE) is now administratively deducting past-due child support payments from his wages and intercepting his state tax refunds. He now seeks from a

court of equity a decree abrogating *ab initio* his obligation to make child support payments and directing the Commonwealth to refund to him the support payments previously recovered. He also seeks amendment of various court orders to delete findings that he is Melissa's father.

Mr. Stover's petition was filed on July 27, 1989. *Ore tenus* and documentary evidence was presented at several hearings. Early in the proceedings, Melissa was made a party and appointed a guardian *ad litem*. The parties were requested to attempt to arrive at a stipulation as to the amount of support arrearages owed (if, indeed, they be owed), or to present evidence on that point. Their stipulation was filed on April 27, 1990, and final arguments were presented on June 5, 1990.

Claudia Richardson Stover (now Ramsey) and Larry Stephen Stover were married to one another on August 9, 1968. Melissa Dawn Stover was born on March 27, 1973.

On April 14, 1984, in a proceeding at which he personally appeared and to which he was a proper party, Mr. Stover was ordered by the Juvenile and Domestic Relations Court of the City of Roanoke (the Honorable Lawrence L. Koontz, Jr., Judge presiding) to pay $36.25 per week for the support and maintenance of his child, Melissa Dawn. This order was not appealed.

Mrs. Ramsey filed a suit for divorce against Mr. Stover in this Court on June 5, 1974. The bill of complaint, served by order of publication, alleged that Melissa was a child of the marriage of the parties. In depositions taken in this suit on October 25, 1974, Mrs. Ramsey and her corroborating witness, William Kenneth Ramsey, Jr. (later her husband), both testified that Melissa was a child of the marriage between Mrs. Ramsey and Mr. Stover. On November 12, 1974, this Court (the Honorable Robert J. Rogers, Judge presiding) granted Mrs. Ramsey an *a vinculo matrimonii* divorce from Mr. Stover. In that decree, the Court found that Melissa was a child of the Stover marriage.

This was the third divorce suit filed by Mrs. Ramsey against Mr. Stover. By agreement of counsel, all three divorce files are before this Court at this time. The two earlier suits had been dismissed, one on motion of the complainant and one for failure to prosecute.

On December 15, 1982, a final order of adoption was entered in this Court. By that final order, Melissa was adopted by her mother's husband, William Kenneth Ramsey, Jr.; her name was changed to Melissa Dawn Ramsey. Larry Stephen Stover executed and acknowledged a

consent to adoption in this case, averring that he was Melissa's natural father and that he consented to the adoption and change of name.

The parties have stipulated that Mrs. Ramsey received public assistance for the support of Melissa during periods of 1974, 1976, 1977, 1978, and 1979; that the DCSE is subrogated to Mrs. Ramsey; and that, giving credit for amounts recovered, the amount due DCSE is $2,727.96. The parties further have stipulated that for the periods between the 1974 child support order and the 1982 adoption order when public assistance was not being received, Melissa was entitled to the court-ordered child support payments, and that the amount of support due on behalf of Melissa until the adoption order was entered is $10,564.50. No claim is made that Mr. Stover owed any support obligation for Melissa after entry of the adoption order.

On September 12, 1989, Mr. Stover, Mrs. Ramsey, and Melissa voluntarily submitted to human leukocyte antigen (HLA) testing conducted by Roche Biomedical Laboratories. The results of the tests conducted are before the Court by agreement. These tests conclusively exclude the possibility that Mr. Stover is Melissa's biological father. Neither DCSE nor the guardian *ad litem* has questioned the scientific validity of the HLA testing, and the Court accepts the tests as valid. Mr. Stover is not, in biological fact, Melissa's father.

From the testimony presented, including the testimony of Mrs. Ramsey, the parties and their lawyers have concluded that William Kenneth Ramsey, Jr., was Melissa's natural father. This conclusion flows naturally from the evidence. Mr. Ramsey who, it will be remembered, was also Melissa's adoptive father, Mrs. Ramsey's deposition witness, and Mrs. Ramsey's second husband, died during the pendency of these proceedings.

Mr. Stover correctly notes that HLA testing did not exist in 1974 when he was ordered to pay support for Melissa and when the final divorce decree was entered. In his petition, he argues that he should be relieved of his accrued support-payment obligations and that all prior orders should be "corrected" on the basis that equity will relieve parties of mistakes of fact. In oral argument, he also has asked the Court to order the DCSE to refund the sums previously collected from him. As an alternative basis for relief, Mr. Stover has argued, orally and in a letter-memorandum of counsel dated January 11, 1990, that the Court should correct the finding in the prior orders that Melissa is his child

on the basis of fraud on the Court, under Virginia Code § 8.01–428. I find neither argument persuasive.

This is not a case in which a man seeks to be relieved of a continuing obligation to support a child not, in fact, his. Rather, it is a case in which a man has long flouted fixed and determined court-ordered obligations. This is not a case about paternity. Rather, it is about money and the enforceability and finality of judicial judgments, rendered in proceedings to which the debtor was a proper party. Mr. Stover seeks equitable relief, but he had not done equity.

At the time of Melissa's birth, Mr. Stover was married to her mother. Melissa was given Mr. Stover's name, and he held her out to the world as his child. From the time of Melissa's birth until she was adopted by Mr. Ramsey, Mr. Stover had all of the privileges of fatherhood. When the time came that the husband of Melissa's mother desired to adopt and raise Melissa (at age 9), Mr. Stover was a participant in the proceedings, whose consent was deemed necessary and whose consent was obtained.

Obligations flowed from this relationship. These obligations were fixed, in financial terms, by the Juvenile Court's 1974 order. No one but Mr. Stover was under court order to support Melissa. The testimony and written exhibits demonstrate that, throughout the years, Mr. Stover has been aware fully that the Commonwealth of Virginia was making, or had made, child support payments that he had been ordered to pay for the child he claimed as his. Mr. Stover, with full knowledge of his obligations and of the Commonwealth's payments, failed and refused to meet his obligations. It is too late for a court of equity to relieve Mr. Stover of the obligations he did not meet.

> One of the maxims of equity is that he who seeks equity must do equity. Another maxim is that equity aids only the vigilant. It will not assist one who has slept too long on his rights. A court of equity is never active in relief which is against conscience or public convenience. It has always refused to give its aid to stale demands where the party has slept upon his rights and acquiesced in adverse use thereof to the prejudice of another for a great length of time. "Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discounte-

nanced." *Doggett, et al. v. Helm, et al.*, 17 Gratt. (58 Va.) 96 (1866).

*Puckett, et al. v. Jessee, et al.*, 195 Va. 919, 930, 81 S.E.2d 425 (1954).

Mr. Stover "is confronted with this unsurmountable obstacle. He who comes into equity for relief must come with clean hands." *Everett v. Bodwell, Adm'x, Etc.*, 185 Va. 405, 407, 38 S.E.2d 319 (1946).

> Where a suit in equity concerns the public interest as well as the private interests of the litigants, the clean hands doctrine assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case, it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public.

7A Michie's Jurisprudence, *Equity*, § 17 at 241, *citing, General Research Corp. v. United States*, 541 F. Supp. 442 (E.D. Va. 1982).

The Court of Appeal's "research discloses that it is an unresolved question whether the equitable maxims applicable to equitable jurisdiction apply to divorce cases which are purely statutory." *Westbrook v. Westbrook*, 5 Va. App. 446, 456, 364 S.E.2d 523 (1988). Although the vehicle in which Mr. Stover has filed his petition for relief is the ended divorce suit between the parties, he seeks traditional equitable relief on traditional equitable grounds, as those grounds are described in *Westbrook*, *see* letter-memorandum of petitioner's counsel, dated January 11, 1990 (e.g., "The Court, utilizing its equity jurisdiction, always has the right to correct an injustice caused to an innocent party by court proceedings"), and I am satisfied that "the equitable maxims applicable to equitable jurisdiction" do, in fact, apply to this case. I briefly discuss below the mode of proceeding that Mr. Stover has chosen.

"Mr. Chief Justice Vinson, in *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S. Ct. 677, 91 L. Ed. 884, said: 'We find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued'." *Local 333B, United Marine Division, etc., et al. v. Commonwealth*, 193 Va. 773, 784, 71 S.E.2d 159, *cert. denied*, 344 U.S. 893, 73 S. Ct. 212, 97 L. Ed. 690 (1952); *see, Nicholas v. Commonwealth*, 186 Va. 315, 45 S.E.2d 306 (1947).

When Judge Koontz entered the support order in 1974, he had jurisdiction over the subject matter and the parties. I find from the evidence that his order was deliberately disobeyed by Mr. Stover. Under all of the circumstances of this case, equity cannot grant relief.

All parties have assumed that if the relief sought were to be granted to Mr. Stover, it could be granted upon the petition that he filed in the ended divorce suit. This assumption is made despite the fact that the payment obligation from which Mr. Stover now seeks to be relieved arose from an order of the Juvenile and Domestic Relations Court, and notwithstanding the implicit finding of paternity in still another case, the adoption proceeding. I have substantial doubt that the mode of proceeding chosen is the correct one. *Cf., Byrum, et al. v. Lowe & Gordon, Ltd.*, 225 Va. 362, 365, 302 S.E.2d 46 (1983). However, since I am satisfied that Mr. Stover is not entitled to prevail, whichever mode of proceeding in chancery he chooses, I accept the premise upon which the parties have proceeded and decide the case as it has been presented to me.

Counsel for DCSE and the guardian *ad litem* have argued not only that this case should be decided upon principles of equity, but also that the doctrine of *res judicata* would bar Mr. Stover from obtaining the relief sought. I note that counsel for DCSE has directed the Court to reported *res judicata* cases from other jurisdictions which are, for all practical purposes, indistinguishable from the case at bar; Mr. Stover has cited no authority contrary to these cases.

For the foregoing reasons, Mr. Stover's petition will be denied.