## CIRCUIT COURT OF THE CITY OF RICHMOND

Edward A. Johnson

    v.

E. R. Carpenter Co., Inc.

July 30, 1990

Case No. N-8525-1

By JUDGE MELVIN R. HUGHES, JR.

[There was a] trial in this case before the Court on May 11, 1990, on plaintiff's Motion for Declaratory Judgment and defendant's Answer and Motion for Permanent Injunction.

The case centers around the enforceability of a non-compete provision in plaintiff's (Johnson's) written employment contract with defendant, E. R. Carpenter (Carpenter), a manufacturer of polyurethane foam and other fill products for use in furniture, medical equipment, bedding, bedding accessory, and many other products.

### The Evidence

The evidence revealed that Johnson has been in sales with a number of companies from 1978 to 1984, including Molson Beer and the broadcast and advertising industry creating television and radio advertisements. Prior to coming to Carpenter in March, 1988, Johnson was employed with Feltex International, Ltd., as sales manager for that company's Slumberwool product line. Johnson later formed his own corporation, Comfort & Sleep Products,

Inc., which later acquired Feltex's assets and the Slumberwool and another corporation's trademarks in the bedding accessory product line.

Carpenter agreed to buy Johnson's business and made him its employee as Vice President of Marketing in the Consumer Products Division and to head a new division called Natural Fibers. According to a written purchase agreement, Johnson sold to Carpenter the assets of Comfort & Sleep Products, Inc., including the Slumberwool and Comfort & Sleep Products, Inc.'s and other trademarks and product lines and the corporation's customer lists, good will, etc., with the idea that Carpenter, principally in the manufacture of foam products for wholesale, would begin to make its way into the retail sales market of sleep and bedding products and accessories. Approximately three weeks after coming on board with Carpenter, Johnson testified, he was presented with a backdated written employment contract on a take-it-or-leave-it basis. This contract which he signed because he said he had no choice in the matter, having relocated himself and his family to Richmond from California, included the disputed non-compete provision which is as follows:

> 7. *Restrictive Covenant.* Upon the termination of the Term of Employment, the Employee shall not, without the prior written consent of the Company, directly or indirectly, within the Restricted Territory (hereinafter defined), in competition with the Company, enter into or engage in the business of manufacturing, jobbing, selling, or marketing consumer products or any branch thereof, either as an individual for his own account, or as a partner or joint venturer, or as an employee, agent, or salesman for any person, or as an officer, director, or shareholder (except ownership of publicly traded shares, so long as such ownership is less than 1%) or otherwise, for a period of two years following the termination of the Term of Employment. Solicitation or acceptance of orders outside the Restricted Territory for shipment to, or delivery in, the Restricted Territory shall constitute "engaging in business"

in the Restricted Territory in violation of this agreement. As used herein, "Restricted Territory" means the following geographical area: The Continental United States, Canada, and Europe. It is recognized that a broad geographical area is being described; however, both parties hereto recognize that the Company does business throughout such area, and the Employee has been responsible for operations throughout such area, and such a broad area is necessary for the protection of the Company. This covenant on the part of the Employee shall be construed as an agreement independent of any other provision of this agreement; and the existence of any claim or cause of action of the Employee against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant.

In the event of a breach or threatened breach by the Employee of the provisions of this Section 7, the Company shall be entitled to an injunction restraining the Employee from violating the provisions of this Section 7. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to the Company, including the recovery of damages, for a breach or threatened breach of this Section 7.

On June 16, 1989, Carpenter terminated Johnson. According to Johnson, this was unexpected and came as a complete surprise.

Johnson testified that since his termination, he has become involved with a number of domestic and foreign manufacturers of sleep and bedding accessory products as agent, representative, or consultant. Johnson further testified that distinctions between natural, foam, and synthetic fill products for sleep and pillow products, as well as distinctions between pillows and pads themselves without fill should be kept in mind. Before he came to Carpenter, Johnson stated, Carpenter was not involved with natural fiber products and though Carpenter sales

are mostly in the wholesale area, Carpenter's consumer sales of foam products are made not only through the Consumer Division but through all Carpenter divisions. Johnson also related that while at Carpenter, he never got Carpenter's customer lists, that all potential customers are listed in a standard book available to anyone in the industry, and that he came in contact with the companies with which he is now in some respects affiliated before the time he was with Carpenter. Many of these are not in the same type of product lines selling different bedding products described above not in competition with Carpenter. Johnson stated, as a marketer, he was never made aware of how Carpenter determines pricing of its products because Carpenter applies the "load" to the prices before giving them to him and Carpenter did not set sales targets. All of his dealings while with Carpenter were in the United States and Canada, and he did not call on clients or have any marketing responsibilities in Europe.

Carpenter's Vice President of Sales, Lonnie Scheps, testified differently from Johnson regarding whether Johnson became knowledgeable about how Carpenter does its pricing. He said Johnson was aware of Carpenter's labor costs, overhead, profit and loss -- something the public has no access to -- and the expected percentage of profit according to sales goals Carpenter set from time to time. He testified that though Johnson was not directly involved in the sale of foam products while at Carpenter, the companies with whom Johnson is now affiliated are in direct competition with Carpenter. He stated that while anyone can determine the field of potential customers by consulting standard reference sources in the textile trade, the personal contacts Johnson made while with Carpenter give him an advantage in a business where personal contact means a great deal. Indeed, Johnson was put in contact with many customers while at Carpenter whom he did not know before. According to this witness, Carpenter is involved in sales in Europe where Carpenter has customers and suppliers and where he has seen Johnson at trade shows since his termination.

## The Parties' Contentions

Johnson seeks to have the noncompete provision declared null and void because (1) it prohibits the sale, marketing, or manufacturing of any consumer product when Carpenter is involved primarily in the manufacturer of foam for the wholesale market, (2) it is overbroad covering the United States, Canada, and Europe, and (3) it is not supported by consideration because the agreement was signed after the employment began.

Carpenter seeks an injunction on the ground that the provision protects legitimate business interests and is reasonable because (1) Johnson's position with plaintiff gave him important information and allowed him to have contacts which can be used to take business away from Carpenter, (2) the noncompete prohibition applies only to a clearly-defined business segment of bedding accessories, and (3) if need be, the Court can reform the contract to make it reasonable.

## Analysis

Though the parties' contentions focus mainly on the enforceability of the restrictive covenant in terms of its reasonableness in territorial scope and whether the type of products and products lines Johnson is now involved with are in fact competitive with those Carpenter sells in wholesale or retail markets, the salient issue, and the one Johnson has raised by devoted the least attention to and Carpenter none, is the issue of whether under the circumstances, the covenant is supported by consideration. The Court finds on this basis the noncompete covenant here does not bind Johnson because there is no consideration to support it and that Carpenter cannot invoke injunctive relief under the doctrine of clean hands.

Restrictive covenants binding a departed employee from engaging in employment are not favored generally and are strictly construed against the employer as to their validity. *Richardson v. Paxton Co.*, 203 Va. 790, 795 (1962). Johnson sold to Carpenter his corporation and the Slumberwool, Comfort & Sleep Products and other trademarks, relocated his family and himself to Richmond from California without a written employment agreement

in place prior to or contemporaneously with beginning his employment with Carpenter on March 21, 1988. There is no evidence that at that stage, the noncompete provision was negotiated and bargained for in exchange for the employment generally or for any other term or condition of Johnson's employment with Carpenter. Indeed, Johnson's testimony is instinct with the idea that had he known of the noncompete clause, he may not have agreed to sell his corporation and his trademarks which Carpenter wanted and become employed, giving of his services and experience in the natural fiber bedding accessory retail consumer line. Under the circumstances, Johnson had no choice but to adhere to the written employment contract given he was already here and it would involve considerable inconvenience to himself and his family to refuse to sign the backdated agreement. By that time Johnson's options were foreclosed and he had little choice but to sign. The Court concludes that the noncompete term was not part of the original employment agreement to make employment itself sufficient consideration and that the noncompete term was made a part of a later agreement with Johnson who was already employed. The Court also finds and the parties do not dispute that Johnson's employment was all the while at will. The only written references to Johnson's employment status at the time he came to Carpenter is that contained in the Purchase Agreement for the sale of Comfort Sleep Products, Inc., and its contracts rights with other corporations. The Agreement mentions Carpenter would be under no obligation to complete the installment payments for purchase if Johnson's employment with Carpenter terminated for any reason. There is also no evidence upon which to conclude that the parties orally agreed to the noncompete provision prior to, contemporaneously with, or shortly after the employment began to make that term part of the original contract.

The question then becomes whether Johnson's future employment on an at will basis constitutes consideration for the noncompete agreement entered after the original employment contract. The Court has found one Virginia case on this subject which holds that continued employment after an agreement with an employee already working does supply consideration to support a later agreement to be bound by such a restrictive covenant as here. In *Paramount*

*Termite Control v. Rector*, 238 Va. 171 (1989), Paramount, a pest control company, had been in the business for a number of years before 1982. In that year five employees entered into written noncompetition agreements as a condition of their continued at will employment. In 1986 and 1987 the five employees resigned their positions and began working with a competitor. The Supreme Court reversed the trial court's finding that the noncompete agreements were not reasonable and found them reasonable. Regarding the employees' argument of no consideration, the Court said this at page 176:

> [8] . . . the former employees argue that there was no consideration for their covenants not to compete because they were already employed when they signed the agreements. We have held that employees who continue their at-will employment after their employers offer severance pay, supply the necessary consideration for such promises by continuing their employment after the promises were made. *Dulany Foods v. Ayers*, 220 Va. 502, 510-11, 260 S.E.2d 196, 201-02 (1979); *Hercules Powder Co. v. Brookfield*, 189 Va. 531, 541-42, 53 S.E.2d 804, 808-09 (1949). That principle applies here. Even though Paramount could have terminated the employees at its will after they signed the noncompetition agreements, Paramount continued to employ them and to give them access to valuable information. This supplied the consideration for their promise not to compete.

The court thinks *Paramount* distinguishable on its facts from the facts in the case at bar. In *Paramount* the Court stated the employees there signed the noncompete agreements with this employer as a "condition of their continued at will employment," *Paramount Termite Control v. Rector, supra*, at page 172. There the employer, Paramount, performed by continuing the employment of the employees for four and five years after the signing of the noncompete agreement until the employees resigned and left to go to work for a competitor. On this prong of *Paramount*, the Court regarded the covenant as binding

because Paramount continued to employ the employees until the employees themselves severed the employment relationship by resigning. There was evidence in *Paramount* the covenant was bargained for and given in exchange for a promise to continue the at will relationship and that happened for an appreciable length of time thereafter until the employees voluntarily resigned. Here while Carpenter allowed Johnson to continue his employment at will status, it terminated Johnson unexpectedly after engaging in the sharp practice of imposing an employment term not bargained for and given in the original employment contract just after Johnson had relocated and already begun his employment. Thereafter Carpenter terminated Johnson about fourteen months later. While Carpenter could discharge Johnson without breach of the at will contract and while Carpenter on brief argues it was done because of declining sales, the evidence presents a picture of unfair dealing in the imposition of the noncompete provision and the termination of employment by Carpenter only to leave him at the mercy of the noncompete clause barring him from making a living in his field. These circumstances bear on whether a court of equity considering injunctive relief will enforce a noncompetition provision for equitable relief under the doctrine of clean hands. *Everett v. Bodwell*, 185 Va. 405 (1946).

## Conclusion

For these reasons Johnson is granted the relief he prays for in his request for declaratory relief, and Johnson is denied a permanent injunction.