Present:  All the Justices

SAMUEL M. BUTLER, ET AL.

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 961857                    June 6, 1997

CARRIE C. HAYES, ET AL.

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Carleton Penn, Judge Designate

In this chancery suit, we consider whether the trial court erred in denying cotenants an allowance for permanent improvements made to land they had acquired as the result of a forged deed.

The facts are undisputed.  The controversy involves a two-acre parcel of land in Fauquier County.

In June 1989, one David Brown, Sr., inherited a one-eighth interest in the subject property upon the death of his wife, Leodor James Brown.  The wife was one of eight children of the last record owners of the parcel, John and Maggie James, who died in 1941 and 1962 respectively.  The children, or their descendants, resided in the District of Columbia, Maryland, and New Jersey.

In October 1989, Brown, a Maryland resident, arranged for the preparation of a "Deed of Gift" purportedly conveying the subject property to him.  Named as grantors in the deed were four of the James children.

Brown persuaded an acquaintance, Michele M. Kaub, a Maryland notary public, to execute acknowledgements to the instrument certifying that the grantors had appeared before her.  In fact, none of those persons appeared before the notary nor were they

aware of the transaction at that time. Their signatures on the instrument were forged. Subsequently, the deed, dated October 27, 1989, was recorded among the land records in Fauquier County.

During October 1989, Brown appeared unannounced at the home of appellants Samuel M. Butler and Betty C. Butler. The Butlers' property adjoined the subject unimproved tract and he had been maintaining it for about 20 years. Brown offered to sell the parcel to Mr. Butler and, after some negotiation on the price, Butler agreed to purchase it for $32,500 cash. The Butlers' attorney searched the title and procured title insurance. Eventually, the transaction was closed and the parcel was conveyed by deed from Brown to the Butlers dated and recorded April 11, 1990. The Butlers had no notice of the forgeries at the time of purchase, and there was nothing in the land records to indicate the recitals in the deed were incorrect.

On April 16, 1990, Easter Monday, appellees Verrell McPherson (now Woods) and Carrie Hayes, two of the eight James children, were visiting in Fauquier County. As the result of a report in a county newspaper, they "first became aware" on that day of the Brown-Butler transfer. They notified their brother, Charles James, who promptly contacted Brown and "told him not to cash [Butler's] check." Brown ignored the request.

Several days later, James telephoned Mr. Butler. James notified Butler that Butler had "no interest" in the subject parcel because the signatures on the 1989 deed to Brown were

forged.  Butler responded that he would not place any improvements on the parcel "because the land wouldn't perk."

By letter dated May 22, 1990, James wrote Butler, enclosing a copy of the 1989 deed, stating that the grantors' signatures were forged and that both the 1989 and 1990 deeds were not "legal."  On June 19, 1990, the four purported grantors in the 1989 deed wrote a letter jointly to Butler "concerning an alleged purchase by you of our property."  They wrote:  "We have not consented to any sale of this property, nor is anybody authorized to sell our property."  Labelling any claim by Butler to the property to be "fraudulent," they threatened immediate litigation "seeking punitive damages and attorney's fees from the parties responsible for the fraud."

Butler "took" both letters to his attorney.  Stating he had been "threatened that something wasn't right" on prior occasions in connection with a purchase of land, Butler "just kind of ignored" the telephone call and the letters.

Butler immediately proceeded to resolve the "perk" problem by locating a reserve septic field on adjacent property that he owned.  During "the first part" of July 1990, he erected a modular home "in a week's time" on the property.  By August 1990, Butler had procured a tenant for the property who had moved into the home paying $700 per month rent.

In February 1991, Hayes, McPherson, and James filed a bill of complaint naming Brown and the Butlers as defendants.  The

plaintiffs sought rescission of the forged deed and an adjudication that the Butlers had "no right, title, or interest" in the subject property "other than the interest of David Brown, Sr. which he obtained through his wife Leodor S. James Brown." Subsequently, the Butlers filed a cross-bill against Brown and Kaub, the notary public. The Butlers sought, in the event the plaintiffs prevailed against them, damages from Kaub for violation of her notarial duties.

The suit remained pending for almost four years while discovery proceedings were initiated. During this period, an ore tenus hearing was held on the forgery issue, and both Brown and James died. Before his death, Brown repeatedly refused to submit to the taking of his deposition.

In January 1995, plaintiffs Hayes and McPherson filed an amended bill of complaint naming as defendants the Butlers; the James heirs; heirs, devisees, and successors of deceased James heirs; and "Parties Unknown." The plaintiffs sought the same relief requested in the original bill and added a request for partition of the property. The Butlers filed another cross-bill against Kaub, but the court struck it and allowed the Butlers to proceed against Kaub under the initial cross-bill.

In an answer to the amended bill, the Butlers asserted they were bona fide purchasers for valuable consideration without notice of the plaintiffs' claim and, as such, should not have to surrender "all or part of their title to the subject property."

They also asserted that "since purchasing the subject property they have improved it and the [plaintiffs] would be unjustly enriched if they were awarded the relief sought." In addition, the Butlers alleged that if Brown had only a partial interest in the property and the other defendants also have only a partial interest, the Butlers have both a common-law and statutory claim of compensation for improvements to the property.

Following a December 1995 ore tenus hearing, the chancellor issued a letter opinion in April 1996. The court decided that the 1989 deed was "a nullity" because the grantors' signatures were forged. The court also ruled that the 1990 deed conveyed to the Butlers only the one-eighth interest of Brown that he inherited from his wife. After fixing the fractional shares of the various parties in interest, the trial court found that the "present fair market value" of the subject property with improvements is $130,000 and without improvements is $35,000. In addition, the court decided that the "Butlers are entitled to no credit for the improvements they placed upon the property" because "the Butlers had actual notice of an infirmity in their title, and they did not place the improvements on the property in good faith."

Among its other rulings, the trial court determined the property should be partitioned, noting that the Butlers are willing to take the whole property and pay the other coparceners according to their respective interests. The court also ruled

that the "coparceners, except the Butlers, shall be entitled to rent, based upon their respective shares of the rental value of the land itself, which the Court finds to be $30.00 per year." The court did not require that the Butlers be charged with the rent of $700 per month that he had been receiving since August 1990.

Finally, the trial court mentioned some incidental issues that were still pending, including the liability of the notary, who the court found to be "not only grossly negligent, but guilty of an intentional tort."

In May 1996, the Butlers filed a "Motion for Reconsideration and Clarification." They claimed the trial court failed to address "whether the Butlers, as holders of a one-eighth interest in the land, should be entitled to credit for their improvements as cotenants and coparceners pursuant to the general rule of equity." They asserted "that generally a coparcener who places permanent improvements upon common property at his own expense is entitled to compensation in the event of a partition," even in the absence of a showing that the cotenants consented to the improvements, citing White v. Pleasants, 227 Va. 508, 514, 317 S.E.2d 489, 492 (1984), and Jones v. Jones, 214 Va. 452, 454-55, 201 S.E.2d 603, 605 (1974).

In June 1996, the trial court entered a decree that confirmed the rulings set forth in the court's opinion letter. The decree implicitly denied the Butlers' motion for

reconsideration, repeating the finding that the Butlers "did not place the improvements on the property in good faith."

The Butlers appeal from that decree. Although the decree is not final, it is appealable according to the provisions of Code § 8.01-670(B)(3) because it has adjudicated the principles of a chancery cause. Plaintiffs Hayes and McPherson are the only appellees appearing on appeal.

First, invoking equitable principles, the Butlers contend the trial court erred by not giving them "credit for their improvements as cotenants or coparceners, in view of their holding a one-eighth interest in the land at the time the improvements were made." We do not agree.

The allowance ordinarily given a cotenant for permanent improvements upon real estate that is ultimately partitioned is not a legal right. Rather, compensation of this kind is allowable to enable a court of equity to do justice and to prevent one tenant from becoming enriched at the expense of another. Shotwell v. Shotwell, 202 Va. 613, 618, 119 S.E.2d 251, 255 (1961). But, according to a settled equity maxim, a litigant who seeks to invoke an equitable remedy must have clean hands. The Butlers fall short of fulfilling this requirement.

Even though it was eventually determined that the Butlers had a one-eighth interest in the parcel, the evidence shows that at the time the improvements were placed upon the property, they did not know conclusively whether they had any interest at all in

the land.  Butler ignored all the information he received notifying him, as he testified, "that there was going to be trouble" with the validity of his title.  Armed with this information, Butler had the affirmative obligation to inquire about the alleged defect in title.  Instead, proceeding at his own risk, he built a house within weeks, quickly found a tenant, and immediately began collecting rent of $700 per month.

This property had been in the James family for many years.  It was unimproved and, according to the evidence, had been enjoyed, along with other adjacent family owned land, by various family members during their infrequent visits to Fauquier County.  The Butlers' unilateral, defiant act of improving the property prevented the other cotenants from enjoying the land in its unimproved state.  Indeed, the Butlers have had exclusive use of the land for over six years and have unjustly enriched themselves at the expense of the other cotenants by receiving thousands of dollars in rent during the period.

In sum, we cannot say that the trial court abused its discretion in refusing to give the Butlers credit for improvements based on a purely equitable remedy.

Second, the Butlers seek a statutory remedy.  They argue the trial court erred by refusing to give them an allowance for improvements pursuant to Code § 8.01-166.

According to § 8.01-166, a defendant mistakenly holding land and against whom a decree or judgment is rendered regarding the

land "may, at any time before the execution of the decree or judgment, present a pleading to the court rendering such decree or judgment, stating that he, or those under whom he claims while holding the premises under a title believed by him or them to have been good, have made permanent improvements thereon," and may move for an allowance for the improvements.

Construing the statute, this Court repeatedly has held that it has no application to a party who is not a bona fide purchaser, and that a person with notice, actual or constructive, of infirmity in the title cannot recover compensation for permanent improvements made on the premises.  Richmond v. Hall, 251 Va. 151, 157, 466 S.E.2d 103, 106 (1996); Richardson v. Parris, 246 Va. 203, 206, 435 S.E.2d 389, 391 (1993); Kian v. Kefalogiannis, 158 Va. 129, 132, 163 S.E. 535, 537 (1932).

The Butlers argue that "[a]lthough there have been no cases in Virginia specifically addressing the point in time at which one must believe one's title to be good in order to be entitled to an allowance for improvements, the logical reading of Section 8.01-166 is that this determination should be made at the time of purchase."  The Butlers point out they paid full value for the land, "were bona fide purchasers," and "only received notice after paying full value."  We reject this argument.

An analysis of the statutes dealing with compensation for improvements to real property, found in Article 15 of Chapter 3 of Title 8.01 of the Code, reveals that the critical time for

believing title is good is not when the property is purchased, but when improvements are placed upon the land.  For example, Code § 8.01-166 speaks of a claimant making improvements "while holding the premises under a title" believed by the claimant to be good.  Additionally, Code § 8.01-169, addressing how value of improvements is to be determined, requires a jury to be satisfied the claimant made permanent improvements on the premises "at a time when there was reason to believe the title good."  Clearly, these statutory provisions contemplate a focus on the time when improvements are made rather than some prior time.

And, as we have said, the Butlers were fully aware of the title defect when the improvements were made.  Thus, the trial court correctly ruled they are not entitled to the statutory relief sought.

Consequently, we will affirm the decree appealed from and will remand the cause for further proceedings.

<u>Affirmed and remanded</u>.