## CIRCUIT COURT OF FAIRFAX COUNTY

Sharon A. Songer

 v.

Mildred H. Stokes et al.

October 22, 1998

Case No. (Chancery) 141849

BY JUDGE DAVID T. STITT

This matter came before the Court for trial on Plaintiff's Bill of Complaint for Breach of Fiduciary Duty and Sale of Real Property. The Court has reviewed the testimony and evidence presented at trial, Plaintiff's Memorandum in Support of Judgment, Defendant's Post Trial Brief, and Plaintiff's Rebuttal Memorandum, as well as the procedural history of this matter. The Court makes the following findings of fact and conclusions of law.

### Findings of Fact

This suit was filed in September 1995, by the Plaintiff, Sharon A. Songer, against Defendants, Mildred H. Stokes, Christopher Thomas Stokes (the son of Mildred and Christopher Stokes), Crystal Stokes Stewart (Christopher Stokes' daughter from a previous marriage), and Carrada X. Stewart (Crystal Stokes Stewart's husband).

In June, 1988, Songer met Christopher Stokes ("Stokes") when her daughter was assigned for counseling to Stokes, who was employed as a probation officer for the Fairfax County Juvenile and Domestic Relations Court. Songer and Stokes subsequently began an adulterous relationship, and later in 1988, Stokes moved into Songer's home at 9534 Blake Lane in Fairfax County.

After they commenced cohabitation, Songer told Stokes that she was in dire financial straits and that creditors were taking legal action against her. At least one lawsuit was pending for unpaid medical bills, and Songer was having

problems paying her mortgage. In February, 1989, a warrant in debt related to the mortgage was filed against Songer, returnable to February 22, 1989.

In the face of that impending legal action, Songer and Stokes agreed to a transaction in which Songer would "sell" her house on Blake Lane to Stokes. Songer testified that she signed a contract of sale with Stokes on or about February 8, 1989, with closing to be conducted by attorney Barbara Mattick Andrick on February 21, 1989, the day before the return date for the warrant in debt.

Andrick testified that she met with Songer and Stokes on or about February 21, 1989, in her capacity as a real estate closing attorney. At the direction of Stokes, Andrick had prepared documents reflecting a purchase by Stokes of a one-half interest in the property, with a seller take-back note. However, when Songer and Stokes arrived at Andrick's office, they advised Andrick that the transaction had changed to a purchase of the entire interest in the property by Stokes. Songer was not to receive any cash back, and the deed of trust securing the seller take-back note was not to be recorded or secured.

Andrick further testified that because she had not received instructions from the first trust holder, Perpetual Savings Bank, F.S.B., regarding assumption of its note, she recommended that the matter not be closed that day. However, Songer and Stokes insisted on closing immediately, against Andrick's advice. Andrick then asked both Songer and Stokes to write statements acknowledging that they were aware of the risks involved in the transaction.

The handwritten acknowledgments which Andrick required were presented to the Court as Defendants' Exhibits Nos. 5 and 6. Songer's statement read as follows: "I am aware that this original note I received today 2/21/89 is not secured. /s/ Sharon Songer." Defendants' Exhibit 5. Stokes' statement was the following: "I, Chris Stokes, has [sic] been advised by Attorney Barbara Mattick, P.C., that Perpetual has not sent instruction of the note being assumable. /s/ Christopher Stokes 2/21/89." Defendants' Exhibit 6.

After Songer and Stokes completed their separate handwritten notes, Andrick proceeded with the closing. Although the deed was recorded, it was not secured by a deed of trust. Stokes gave Songer a note with a face value of $31,215.81. The note made no reference to the property.

Although Songer testified that she relied on Stokes' experience as a real estate agent and former police officer with regard to the transaction, she conceded that she was aware that at least part of the purpose of the transaction was to forestall or avoid creditors. Songer also recalled Andrick as having been very clear that the note was not secured.

After the Blake Lane property was put in Stokes' name, Stokes made payments on the mortgage. However, Songer continued to live in the house with Stokes after the "closing" and paid no rent to Stokes. No payments were made on the $31,215.81 note. Because the first trust was not assumable, Perpetual, the first trust holder, called the note due when it learned of the purported transfer from Songer to Stokes. Songer continued to live in the house after Stokes' death in 1989. At the time of Stokes' death, the property was in default. Rather than take out a second trust to save the property from default again, the property was sold to Stokes' estate, but no profit was made on the sale.

### Procedural History

Stokes died intestate in 1989. His widow, Mildred Stokes, qualified as administratrix of Stokes' estate. Shortly thereafter, Mildred Stokes discovered the existence of the relationship between the deceased and Songer. Songer presented her note for $31,215.81 as a debt owed by Stokes' estate.

This matter was originally filed on August 31, 1990, as Law No. 99563, which later was nonsuited On May 17, 1994, Law No. 132267 was filed against Mildred Stokes, Administratrix of the Estate of Christopher Stokes, and Mildred Stokes in her individual capacity, for the value of the note, $31,215.81. On August 10, 1994, default judgment was entered in favor of Songer against Mildred Stokes, individually and as Administratrix of Stokes' estate. When Songer attempted to collect on the judgment by filing a garnishment and levy, Mildred Stokes appeared and contested the judgment against her as an individual. This Court vacated the judgment as it applied to Mildred Stokes individually and transferred the action against the heirs of the estate to Chancery as Chancery No. 141849, the instant suit.

An inventory of the estate was filed on November 18, 1994, in Fiduciary No. 45186. An exception to the accounting also was filed. In response to the exceptions to the accounting, the Defendants filed a motion to return the case to the Commissioner of Accounts. On September 15, 1995, this Court entered an order returning the matter to the Commissioner of Accounts. That order subsequently was vacated. Plaintiff's counsel unsuccessfully attempted to have the matter returned to the Commissioner of Accounts.

In April, 1996, Mildred Stokes filed Law No. 151692 against Sharon Songer. The Motion for Judgment never was served, and the case was dismissed by the Court on May 9, 1997.

*Conclusions of Law*

Count I of the instant suit, Chancery No. 141849, alleges Breach of Fiduciary Duty.[2] Plaintiff Songer asserted that Mildred Stokes was negligent in the performance of her duty to administer the estate of Christopher Stokes. At trial, Plaintiff Songer's counsel asserted that certain items listed in the initial inventory filed by Mildred Stokes remained in her possession. Plaintiff's counsel also referred the Court to the disbursement and distribution sheet from the second accounting filed by Mildred Stokes to support the assertion that certain distributions were made in excess of statutory priorities. Plaintiff's counsel asked for the items to be returned to the estate and for payment to be made to the creditors. In the alternative, Plaintiff's counsel asked that the matter be returned to the Commissioner of Accounts for resolution.

In response, Defendants' counsel argued that the proceeding was collaterally estopped by Va. Code § 26-34 because the proper method for impeachment of settlement of an account is by a suit in equity to surcharge and falsify.

Defendants' counsel also invoked the equitable doctrine of unclean hands, arguing that Songer's note was the product of a sham transaction, and asked the Court to dismiss the matter.

In *Butler v. Hayes*, 254 Va. 38, 487 S.E.2d 229 (1997), the Virginia Supreme Court applied the equitable doctrine of "unclean hands." In *Butler*, the defendant purchased a parcel of property. The defendant later learned that the grantor had had no authority to sell the property and that the chain of title was invalid by reason of a forged deed. Nevertheless, the defendant placed improvements on the property. When the defendant was sued in equity for rescission of the sale, he claimed an equitable set-off or credit. The Supreme Court held that because the defendant had ignored the information he had received about the defect in his title, he had come to equity with unclean hands and equity would not grant him the relief he requested.

In another case which is similar to the instant matter, *Everett v. Bodwell*, 185 Va. 405, 38 S.E.2d 319 (1946), the Virginia Supreme Court applied the doctrine of unclean hands to bar recovery. In *Everett*, the plaintiff owned a building. The plaintiff leased the first floor of the building to Bodwell to use for operating a business and also sold the business to Bodwell. The plaintiff and Bodwell prepared a deed of bargain and sale. Bodwell was to make monthly payments on a promissory note which he gave to the plaintiff. The

---

[2] Count II of the Bill of Complaint was dismissed at trial without objection by the Plaintiff.

parties agreed to keep the deal secret and agreed not to record the deed of bargain and sale so that Bodwell's creditors would not discover the degree of Bodwell's indebtedness to the plaintiff. Bodwell died intestate, leaving Plaintiff with an unrecorded deed of bargain and sale and no lien. The plaintiff then brought an action in equity against the administratrix of Bodwell's estate to force a lien based on his agreement with the decedent. The Supreme Court affirmed the dismissal of the case based on the doctrine of unclean hands.

The application of *Butler* and *Everett* to the case before the Court requires that this matter be dismissed. In *Everett*, the parties engaged in fraud on the decedent's creditors by failing to record a lien which would have served as notice to Bodwell's creditors. In the matter before the Court, Songer and Stokes purposefully failed to record a deed of trust which would have served as notice to Songer's creditors of the true state of her assets.

Songer was aware at the time of the transaction that the first trust holder had not given permission for assumption of its note and that her note was not secured. Although the deed was recorded, there was no deed of trust. Songer continued to live in the house after the transaction, and indeed, even after Stokes' death, yet she never paid any rent to Stokes, the putative "purchaser." The transaction has none of the indicia of a legitimate real estate transaction and was, in fact, a sham. Accordingly, this case is dismissed with prejudice.