### Richmond

R<small>UTH</small> Q<small>UILLEN</small>, <small>ET AL.</small>

V.

E<small>DWARD</small> L<small>UNN</small> T<small>ULL</small>, <small>ET AL.</small>

Record No. 810725.

January 20, 1984.

Present: All the Justices.

*Glen A. Tyler (W. Revell Lewis, III; Tyler and Lewis,* on briefs), for appellants.

*R. Norris Bloxom* for appellees.

COCHRAN, J., delivered the opinion of the Court.

Mary Ann Beebe died testate in 1940. Under her will, she directed her executor to sell her real estate and divide the proceeds among specified beneficiaries. Although the executor carried out the mandate of the will as to certain realty, he died without having sold four parcels on Chincoteague Island.

On November 7, 1979, Edward Lunn Tull and Zed Ayres, who together owned approximately a 52 per cent interest in the parcels, filed a bill of complaint in the trial court seeking partition by sale and distribution of the proceeds. Named as defendants were known and unknown parties having interests in the land. Ruth Quillen and other parties defendant filed a cross-bill seeking to have the court partition the property, with the property being sold if necessary and the proceeds divided among those who owned interests in it.

After hearing evidence *ore tenus,* the trial court by decree entered February 9, 1981, ruled that the land was not susceptible of partition in kind, ordered the allotment of two parcels to Tull at specified prices, and ordered commissioners to sell the other two parcels at public auction as one parcel, allowing Tull a credit for enhancement in value by improvements he made. Tull purchased the two parcels and paid the purchase price to the commissioners appointed by the court to conduct the sale. The court confirmed the sale. On appeal, Ruth Quillen, Tyrone Mason, Robert J.

Pointer, James T. Lunn, Jr., Ernestine Holston, Ernestine M. Savage, and Ronald L. Beebe, seven of the many parties having interests in the land, challenge the manner in which the court effected partition. (The appellants will be referred to collectively as Quillen).

The four parcels are designated as A, B, C, and D on a plat dated March 24, 1980, filed as an exhibit in the trial court. Parcel A contains 18.5 acres; parcel B, 4 acres; parcel C, 4.1 acres; and parcel D, 7.3 acres. Parcels C and D adjoin. There is no dispute as to the accuracy of the plat in showing the location and acreage of the parcels. There is also no dispute as to the identity and respective interests of the more than 60 owners of the Mary Ann Beebe Land.

During the course of the litigation, Tull offered to buy parcels A, B, C, and D for a total price of $53,920; in the alternative, he made separate offers of $17,300 for A, $4,000 for B, $9,200 for C, and $23,420 for D. Subsequently, Ruth Quillen and her husband offered $18,000 for A, $15,000 for C, and $35,000 for D. In the decree of February 9, 1981, the court allotted A to Tull for $17,300, exclusive of enhancement in value occasioned by Tull's acquisition of a 50-foot roadway which was an easement appurtenant to the parcel. The court allotted parcel B to Tull for $4,000, exclusive of enhancement in value occasioned by Tull's acquisition of the road for it and his development of the parcel as a mobile home park. In ordering parcels C and D sold at public auction as one parcel, the court ruled that Tull had enhanced their value by 30 per cent by acquiring two roadways which were easements appurtenant to the parcels.

Quillen first argues that the court erred in finding enhancement in value of parcels C and D and in fixing this enhancement at 30 per cent of the value of the two parcels. Second, she says that the court erred in allotting parcel A to Tull and abused its discretion in not ordering that this parcel be sold at public auction. Third, she contends that the court erred in allotting parcel B to Tull for $4,000.

### Parcels C and D.

Tull, who said that he had been involved in real estate transactions on Chincoteague Island since 1960, estimated the value of parcel C at $6,000, or $1,500 per acre, and parcel D at $15,000. He said there was no access to the parcels. C. E. Kambarn, a local

real estate speculator who was associated with Tull in some business transactions, testified that parcel C was worth $6,000 with a right-of-way and $3,000 without one. He estimated that parcel D was worth $15,000, apparently based on the assumption that there was access to it.

Johna Davis, an experienced real estate broker and appraiser, testified for Quillen. Apparently assuming there was access, he valued all four parcels at $3,675 per acre, based on comparable sales, so that his estimate for parcels C and D together was approximately $43,000.

The record shows that the only access to parcels C and D consists of two connecting roadways: (1) a 30-foot-wide easement, bought for $200 to $300 by Tull and Ayres in 1963, which runs from a public highway to land of Ayres adjacent to parcel D; and (2) a 15-foot-wide easement, reserved by Tull across some adjacent land he had conveyed to a third party, which connects the first easement to parcel D. Tull appeared to believe that these easements were easements in gross which belonged to him, but the court ruled that they were easements appurtenant to parcels C and D.

At the second of two *ore tenus* hearings, the parties presented evidence as to whether these easements enhanced the value of parcels C and D. John Winder, a real estate appraiser testifying as a witness for Tull and Ayres, said that parcels C and D would be worth $12,000 and $25,000, respectively, without the easements, and $17,000 and $35,000, respectively, with the easements. He said that he based his estimates on comparable sales, as well as on some consideration of the cost of obtaining access to the parcels. Donald Leonard, another real estate appraiser called by Tull and Ayres, estimated that the easements enhanced the value of parcels C and D about one-third. He based this estimate on various factors, including comparable sales, the possible use of the property, and the cost of obtaining access to the parcels. Davis, Quillen's appraiser, was unable to estimate the enhancement created by the easements.

In a partition suit, a joint tenant is usually entitled to compensation for permanent improvements he has made to the property, but the compensation is limited to the enhanced value of the property rather than the cost of the improvements. *Jones* v. *Jones*, 214 Va. 452, 454-55, 201 S.E.2d 603, 605 (1974); *Dalgarno* v. *Baum*, 182 Va. 806, 808, 30 S.E.2d 559, 560 (1944). If a

tenant desires compensation for enhancement, he must request it in his pleadings; if, however, the parties' testimony treats permanent improvements as calling for compensation, a specific pleading is unnecessary. *Griffin* v. *Tomlinson*, 159 Va. 161, 178-79, 165 S.E. 374, 380 (1932).

Quillen argues that Tull and Ayres did not plead enhancement and that Tull explicitly claimed that the easements were not appurtenant to parcels C and D. It is true, as Tull and Ayres concede, that they did not plead enhancement, and it is also true that Tull originally contended that the easements were easements in gross belonging to him. Nevertheless, the second *ore tenus* hearing, after the court ruled that the easements were appurtenant, did deal specifically with the question of enhancement. We hold that the *Griffin* exception applies and that the court properly considered enhancement.

Quillen says that the evidence of enhancement, however, was improper because Winder and Leonard based their testimony on the actual cost of obtaining access rather than on the extent to which the easements enhanced the value of the parcels. Although Winder and Leonard did consider the expense of acquiring the easements, their estimates were based upon other factors as well, such as comparable sales, and there was no contemporaneous objection to the method they used in arriving at their estimates of enhancement. Rule 5:21.

There was evidence that the value of parcels C and D was enhanced approximately one-third or more by Tull's acquisition of the easements. Accordingly, we hold that there was evidence to support the court's finding that the value of these parcels was enhanced by 30 per cent and its ruling that Tull was entitled to credit for such enhancement. We will not disturb the finding or the ruling.

### Parcel A.

Of the 18.5 acres in parcel A, approximately 14.5 acres are marsh land and approximately 4 acres are high land. In 1972, Tull acquired from Wyle Maddox and his wife a 50-foot-wide easement extending approximately 1200 feet connecting parcel A to a public road. Subsequently, Tull built a road from the public road along the easement through lands of Maddox, and continued the road through parcel A to other lands of Tull.

Tull testified that parcel A was worth $4,000 to $5,000 without the easement and $13,000 to $15,000 with the access road. Kambarn, testifying for Tull and Ayres, said parcel A was worth $4,500 without access and $9,000 with access. Davis, Quillen's appraiser, valued the parcel at approximately $68,000 with access.

The court, in allotting the parcel to Tull for his offer of $17,300 in preference to Quillen's offer of $18,000, observed that the enhancement in value caused by Tull's acquisition of the easement exceeded the $700 difference in the offers. There was ample evidence to support this conclusion.

Quillen argues, however, that Tull failed to produce competent evidence as to the value of parcel A. Quillen claims that Tull's evidence, which consisted of the testimony of Kambarn and Tull himself, was incompetent and biased. The admissibility of testimony regarding the value of property is, however, largely within the trial court's discretion. A witness need not necessarily be an expert in the field of real estate; it is sufficient for him to have resided and done business in an area long enough to learn the basic facts which determine the property's value. *Whitworth* v. *Highway Commissioner*, 209 Va. 95, 99-100, 161 S.E.2d 698, 702 (1968); *Kerr* v. *Clinchfield Coal Corp.*, 169 Va. 149, 155-56, 192 S.E. 741, 743 (1937). Kambarn and Tull, therefore, were entitled to testify as to the value of parcel A, and the weight and credibility of their testimony were for the trial court to assess. *Kerr*, 169 Va. at 155, 192 S.E. at 743. The evaluation of any alleged bias in this testimony lies within the trial court's discretion, and we cannot say that the trial court abused its discretion in this case.

Quillen further argues that the court abused its discretion in allotting the property to Tull rather than ordering that it be sold at public auction. Code § 8.01-83 specifically authorizes the court, where partition in kind cannot be conveniently made, to allot the property to any one or more of the parties in interest who will pay such sums as the interest of the others may entitle them to receive. The decision rests within the sound discretion of the court. *Shotwell* v. *Shotwell*, 202 Va. 613, 119 S.E.2d 251 (1961); *Thrasher* v. *Thrasher*, 202 Va. 594, 118 S.E.2d 820 (1961).

There was evidence that Tull's acquisition of the easement enhanced the property's value. Kambarn testified that the enhancement was $4,500, and Tull testified that it was approximately $10,000. Therefore, we hold that the court did not abuse its discretion in allotting parcel A to Tull for $17,300, despite

Quillen's offer of $18,000. Since Quillen was not entitled to credit for improvements, the court properly considered Quillen's offer to be inadequate. In other words, Tull's enhancement of the property was greater than the $700 difference between his offer and Quillen's offer. There was ample opportunity for Quillen or others to submit offers higher than Tull's offer of $17,300, exclusive of enhancement for improvements, if that offer were deemed inadequate.

## Parcel B.

Parcel B was originally used as a pasture. Tull, however, developed the land as part of a mobile home park called Ocean Breeze. He estimated that he had spent approximately $80,000 on filling the land and on engineering, water and sewerage work, and roads. The entire area had been filled an average of two feet at a cost of almost $50,000. After Tull's improvements there was improved access to the property over a paved road.

Quillen does not object to the allotment of parcel B to Tull but contends that the allotment price of $4,000 was inadequate. Kambarn testified that parcel B was worth $2,500 before Tull's improvements and $35,000 afterwards. Tull himself said the parcel was worth $1,000 without and $40,000 with the improvements and could bring more over a period of time with additional improvements. Davis, Quillen's appraiser, testified that parcel B was worth $14,700 before Tull's development and $183,000 afterwards.

There was evidence to support the allotment price of $4,000 ordered by the court. Indeed, that was the exact amount of Tull's offer for the parcel, and the court was not required to approve the $14,700 figure to which Davis testified. As with parcel A, Quillen claims that Tull's testimony regarding parcel B should be disregarded, leaving Davis's estimate as the authoritative valuation of the property. For the reasons stated in our discussion of parcel A, however, we reject this claim. The admissibility of the testimony regarding parcel B, as well as the testimony's weight and credibility, were within the trial court's sound discretion. We hold that the court did not err as a matter of law in making the allotment to Tull.

For the reasons assigned, we conclude that there is no error in the decree appealed from, and we will affirm it.

*Affirmed.*