**Richmond**

F. F. WHITE

V.

HELEN E. PLEASANTS, ET AL.

Record No. 811711.

June 15, 1984.

Present: All the Justices.

*Archibald Wallace, III (Edward A. Marks, Jr.; Sands, Anderson, Marks & Miller*, on briefs), for appellant.

*Charles R. Haugh; Charles F. Purcell (Forbes R. Reback; Haugh & Treakle, P.C.; Purcell and Purcell*, on briefs), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, we consider, pursuant to our partition laws, the rights of various owners in a 2.13-acre tract of land and the effect of a certain lease on a portion thereof.

Helen E. Pleasants brought a chancery suit against her 17-year-old daughter, Lisa Carol Morris, and F. F. White, to partition the 2.13-acre tract. Pleasants also sought termination of a lease between White and her on a portion of the tract where White operated a gasoline station (the "station lot").

Lisa, answering by her guardian *ad litem*, alleged that she owned a one-sixth undivided interest in the tract (less her mother's dower therein) and joined in the prayer for partition. She also sought a judgment from White for rent allegedly due her on the station lot.

By his answer and cross-bill, White requested affirmation of the lease and denial of any relief to Pleasants in derogation of his leasehold rights. Later in the proceedings, White filed a petition seeking to have Lisa's interest in the station lot allotted to him and to pay her the value therefor.

Pleasants' other daughter, Rebecca Morris Spain, intervened, claiming she mistakenly conveyed a one-sixth interest in the 2.13-acre tract to White, when she merely intended to convey her interest in the station lot. She sought reformation of her deed to White, rent allegedly due her by White, and partition of that portion of the tract in which she retained an interest.

The evidence, heard by the trial court *ore tenus*, established the following facts. Robert E. Morris, who owned the subject real property, died intestate in 1969. He was survived by his widow, Helen (now Helen E. Pleasants) and his six children.

In 1970, the four adult children conveyed their interests in the property to their mother, thereby vesting Pleasants with a four-sixths undivided fee simple interest in addition to her dower in the remaining two-sixths. Both Lisa and Rebecca were infants at the time, and therefore, could not convey their interests. They retained ownership of the remaining two-sixths, subject to Pleasants' dower therein.

Sometime prior to 1975, the 2.13-acre parcel was subdivided into three separate lots, containing .50 acres, .87 acres, and .752 acres, respectively, as shown on a plat prepared by a surveyor. The .50-acre lot and .87-acre lot, aggregating 1.378 acres, were combined to create the station lot. The remaining .752-acre lot has been identified as the "house lot."

Shortly thereafter, Pleasants leased her four-sixths interest in the station lot to White. At that time, Lisa and Rebecca were still infants. The lease provided that the lot would be used for a gasoline station. Rent was based upon one cent per gallon of gasoline sold, with a $500 per month maximum and a $100 per month minimum. The lease extended for five years, with various renewal options. White constructed the gasoline station on the lot at a cost of $40,000. The lease provided that White had the right to remove all improvements when it terminated. In 1977, White purchased Rebecca's one-sixth interest in the service station lot, subject to Helen Pleasants' dower interest therein.[1]

An expert witness testified that the value of the 2.13-acre tract with improvements was $276,164. He valued the house lot at $73,580 and stated that the station lot had a value of $202,584, allocating $128,000 to land and $74,584 to improvements. He also testified that the fair rental value of the leased property for the land alone was one cent per gallon of gasoline, and, as improved, one and one-half cents per gallon. He opined that the 2.13 acres would produce a higher price if it were sold as two separate lots, the house lot and the service station lot.

The trial court rendered two memorandum opinions which were incorporated into the final decree. The court affirmed the validity of the lease between Pleasants and White, but held that the lease was ineffective as to Lisa and Rebecca, who were not parties thereto. The court reformed Rebecca's deed to White by limiting

---

[1] The deed erroneously described the entire 2.13-acre tract, but the trial court found that the parties intended a conveyance of only the station lot. White conceded at trial that this had been the parties' intent and does not challenge the ruling on appeal.

it to the station lot. It ruled that the 2.13-acre tract had been divided into two separate lots, the station lot, containing 1.378 acres, and the house lot, containing .752 acres, each with different ownership. The court found that the station lot could not be conveniently partitioned in kind, and denied White's petition to allot Lisa's interest therein to him. Because no party would accept allotment of the entire station lot and pay the others the value of their interest, the court ordered the station lot sold and the proceeds of sale divided according to the parties' respective interests. The court also awarded judgments to Lisa and Rebecca against White for rent. Finally, the court determined the fractional interests of the owners of the house lot, but, since none of the owners desired partition, it did not order partition or sale thereof.

■ Because the trial court heard the evidence *ore tenus*, its decree is entitled to the same weight as that which attaches to a jury verdict. The court's findings are binding upon us unless they are plainly wrong or without evidence to support them. *Burns* v. *Winchester Memorial Hospital*, 225 Va. 545, 550, 303 S.E.2d 908, 911 (1983).

■ White first contends that the trial court erred in holding that the 2.13-acre tract had been divided into two separate lots. The evidence reveals that the 2.13-acre tract was divided before White became involved with the land. Indeed, his lease, prepared by his attorney, refers to "[t]wo adjoining lots . . . , one containing 0.878 of an acre, by survey, and the other . . . containing one-half (0.5) of an acre," and it referred to a plat made by Robert L. Lum, dated September 19, 1974, on which the lots were "outlined in red." Lum prepared the plat at White's request. These two lots combined comprise 1.378 acres—the station lot.

White's testimony at trial revealed his knowledge that the 2.13-acre tract had been subdivided.

Q [W]hen you first talked to Mrs. Morris, how much land did you tell her you had to have?

A Those two lots that were adjoining her home place we had to have.

Q Who had this property surveyed?

A I had it surveyed by Mr. Lum.

. . . .

Q Can you tell me where in having it surveyed that that land over there with the house trailer on it now was made a separate lot?

A   I think that had been done previously to my getting it. I am sure that it was a plat.

Furthermore, one of White's witnesses, an appraiser, testified at trial that he was only requested to appraise the service station lot, not the residence property. Additionally, as the court noted, the lots have "different co-owners." Pleasants, White, and Lisa own the station lot. The house lot is owned by Pleasants, Lisa and Rebecca. We find, therefore, that the trial court's decision is fully supported by the evidence.

Following this determination, the trial court was required to decide whether the station lot could be conveniently partitioned in kind. The court found that the lot was not susceptible of partition in kind, and we conclude that this ruling is supported by the record.

White's partition argument totally ignores the court's threshhold finding that the station lot and the house lot are separate parcels. He contends that partition of the 2.13-acre tract can be accomplished by allocating the interests of some of the parties to the station lot and the interests of others to the house lot. He has not requested that the station lot be allotted to him alone and that he pay Pleasants and Lisa the value of their respective shares. Instead, he asked that Lisa's interest in the station lot be allotted to him so that he and Pleasants together would own the station lot, thereby enabling the lease to continue. The trial court found this suggestion impracticable, and we agree.

■ While two cotenants may, *by agreement*, have their joint interests allotted in kind to them jointly, they cannot be compelled to do so against their wishes, or the wishes of either. *Phillips* v. *Dulaney*, 114 Va. 681, 686-87, 77 S.E. 449, 450-51 (1913). Because Pleasants sought partition and was unwilling to agree to this joint allotment, White could not compel it. Moreover, whether an allotment should be decreed is a matter resting within the sound discretion of a trial court, *Quillen* v. *Tull*, 226 Va. 498, 504, 312 S.E.2d 278, 281 (1984), and we find that the trial court did not abuse its discretion in refusing White's request.

After finding that the interest of all owners of the station lot would be promoted by a sale thereof, the trial court determined the interest of each owner, decreeing:

That Helen E. Pleasants is the owner of a four-sixth (4/6) undivided interest in fee simple of the 1.378 acre "Station

Lot" without any improvements thereon, together with a dower interest in the other two-sixth (2/6) undivided interest therein; that Lisa Morris Palmer is the owner of a one-sixth (1/6) undivided interest in the said 1.378 acre "Station Lot" with all improvements thereon, subject to the dower interest of Helen E. Pleasants; and, that F. F. White is the owner of a one-sixth (1/6) undivided interest in the said 1.378 acre "Station Lot" subject to the said dower interest of Helen E. Pleasants, and is further the owner of a five-sixth (5/6) interest in the improvements on the said 1.378 acre "Station Lot" and is also the owner of the dower interest of Helen E. Pleasants in the remaining one-sixth (1/6) of the said improvements; and, that the net proceeds of the sale of the said lot and improvements shall be allotted to the parties in accordance with their said interests. For the purposes of allocating the percentage of the sale proceeds received herein, the 1.378 acre "Station Lot" shall be sold, together with all improvements thereon, and the proceeds of the sale shall be allocated .3664 to the improvements and .6336 to the land itself without improvements.

White contends that the trial court erred in ruling that Lisa was part owner of the improvements he made on the station lot. He argues that he was a joint tenant and that he therefore is entitled to be compensated for the permanent improvements he made to the property.

It is true that "[i]n a partition suit, a joint tenant is usually entitled to compensation for permanent improvements he has made to the property." *Quillin*, 226 Va. at 502, 312 S.E.2d at 280. *See also Jones* v. *Jones*, 214 Va. 452, 454-55, 201 S.E.2d 603, 605 (1974); *Dalgarno* v. *Baum*, 182 Va. 806, 808, 30 S.E.2d 559, 560 (1944). At the time White made the improvements, however, he was not a joint tenant because he had not yet acquired Rebecca's interest in the station lot. He was only a lessee of a four-sixths undivided interest in the station lot, and he had both actual and constructive notice of Lisa's outstanding interest.

Nor is White entitled to recover the value of his improvements *vis a vis* Lisa pursuant to Code § 8.01-166.[2] Although this

---

[2] Code § 8.01-166 reads as follows:

Any defendant against whom a decree or judgment shall be rendered for land, when no assessment of damages has been made under article 14 (§ 8.01-131 et seq.)

section permits a recovery for improvements when the one who made them mistakenly held the land "under a title believed by him . . . to have been good," we have said that "this section has no application to one who is not a *bona fide* purchaser, and that a person with notice, actual or constructive, of infirmity in his title cannot recover for improvements." *Smith* v. *Woodward*, 122 Va. 356, 376, 94 S.E. 916, 922 (1918). *See also Wright* v. *Johnson*, 108 Va. 855, 861, 62 S.E. 948, 950 (1908). As the record shows, White had both actual and constructive notice of Lisa's outstanding interest in the property.

■ Alternatively, White seems to rely upon the provision in his lease permitting him to remove all improvements upon termination of the lease. This argument fails, however, because Lisa was not a party to the lease. She was an infant at the time, and her interest could not be leased without appropriate court proceedings. *See* Code § 8.01-68.

This brings us to Rebecca's and Lisa's claims of rent due them by White on the station lot. As previously stated, at the time White leased the lot from Pleasants, Rebecca and Lisa were infants, each owning a one-sixth undivided interest therein, subject to Pleasants' dower. At the time of trial, Lisa also owned a one-sixth interest in the improvements.

Later, when she was of age, Rebecca conveyed her interest in the station lot to White. White contends that because Rebecca conveyed her interest in the station lot to him, she is precluded from claiming rent which may have accrued at that time. He also contends that if Rebecca and Lisa, or either of them, are entitled to rent, they must look to Pleasants therefor, since White has paid Pleasants all rent due under the lease. We reject both arguments.

■ Respecting White's first contention, suffice it to say that accrued rent is not real property. Rebecca's deed merely conveyed her interest in the land. Therefore, the deed did not extinguish her claim for rent.

of this chapter, may, at any time before the execution of the decree or judgment, present a pleading to the court rendering such decree or judgment, stating that he, or those under whom he claims while holding the premises under a title believed by him or them to have been good, have made permanent improvements thereon, and moving that he should have an allowance for the same which are over and above the value of the use and occupation of such land; and thereupon the court may, if satisfied of the probable truth of the allegation, suspend the execution of the judgment or decree, and impanel a jury to assess the damages of the plaintiff, and the allowances to the defendant for such improvements.

■ When White and Pleasants executed the lease, White knew that Pleasants owned only a four-sixth undivided interest in the station lot, plus dower in Rebecca's and Lisa's interest. He knew, or should have known, that Pleasants could not lease what she did not own. Consequently, the rent he paid to Pleasants could be only for the use of her interest.

■ Evidence was presented respecting the fair rental value of the property, and based upon that evidence, the trial court determined the rent due Rebecca and Lisa. Because these findings are not plainly wrong and are supported by the evidence, they are binding on us.

Pleasants, Rebecca, and Lisa elected to retain the house lot, and, consequently, the trial court did not order sale or partition of it. For reasons previously stated, White lacks standing to challenge this ruling.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*