**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1761**

In Re:  LAMBERT OIL COMPANY, INCORPORATED,

             Debtor.

------------------------------------

WILLIAM E. CALLAHAN, JR., Trustee,

             Plaintiff - Appellee,

        v.

MOUNTAIN EMPIRE OIL COMPANY, INCORPORATED,

             Defendant - Appellant,

        and

QUALITY PROPERTIES, L.P.; ST INVESTMENT COMPANY, LLC,

             Defendants.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Chief District Judge.  (1:07-cv-00005-JPJ; BK-03-01183; AP-04-07135)

Argued:  September 24, 2008          Decided:  October 30, 2008

Before WILLIAMS, Chief Judge, AGEE, Circuit Judge, and T. S. ELLIS, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Rick J. Bearfield, Johnson City, Tennessee, for Appellant. Lori Dawn Thompson, LECLAIR RYAN, P.C., Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William E. Callahan, Jr., trustee (the "Trustee") of the bankruptcy estate of Lambert Oil Company ("Lambert"), filed an adversary proceeding in bankruptcy court seeking to recover the fair market rental value for two convenience stores which were assets of Lambert's bankruptcy estate. The bankruptcy court awarded judgment for unpaid rent in favor of the Trustee against Mountain Empire Oil Company ("MEO") and the district court affirmed. MEO now appeals. Because the factual findings of the bankruptcy court are not clearly erroneous and because the bankruptcy court did not err in awarding judgment to the Trustee for rent due from MEO for its pre-sale use and possession of the stores, we affirm the judgment of the district court.

I.

A.

Lambert contracted to sell two convenience stores to Quality Properties, L.P. ("Quality"), one located in Jonesborough, Tennessee, and the other in Bristol, Virginia. In exchange, Quality agreed to pay a cash amount, assume Lambert's secured obligations to Franchise Mortgage Assistance Corporation ("FMAC") regarding each store, and further assume a separate lease for car wash equipment at the Jonesborough store.

3

The purchase contract also provided that Quality would assume possession and operation of the stores and continue in possession until the sale closed. During the period of pre-closing possession, Quality was to "pay daily rent therefore until closing in an amount equal to" 1/365th of the annual amounts payable under the car wash lease and the secured FMAC indebtedness. These payments would be credited to the cash payment Quality owed Lambert at closing; however, Quality was not entitled to a return of the "daily rent" payments in the event the sale did not close.

For reasons not disclosed in the record, Quality never took possession of or operated either store, made no payments to Lambert, and no closing took place. Rather, Lambert entered into a separate agreement with MEO for the management of the Jonesborough store under which MEO would satisfy all operational expenses and, "during each day of the term of this Contract . . . pay to or for the account of Lambert" 1/365th of the annual amounts due under the secured FMAC indebtedness on that store and its equipment lease, while MEO retained all gross receipts.[1] Although the record does not contain a corresponding agreement for the Bristol store, the parties agreed that MEO also assumed

---

[1] Quality and MEO are both owned and controlled by the same majority shareholders, Warren Broyles and his family.

possession of and operated that store and initially paid Lambert an amount approximating 1/365th of the annual amount due on the FMAC secured indebtedness for each day of operation.

MEO paid Lambert under these arrangements from April through September 2002, at which time MEO learned that Lambert was no longer making payments on the FMAC obligations. After September 30, 2002, MEO continued to possess and operate the stores through June 2004 but made no further payments.

In March 2003, Lambert filed a petition under Chapter 11 of the United States Bankruptcy Code. In September 2003, the case was converted to a Chapter 7 proceeding and the Trustee was appointed by the bankruptcy court. The Trustee negotiated with MEO for payment of the prior unpaid and ongoing rents, but the parties did not reach an agreement. Instead, MEO and Quality proposed a purchase of the stores.

In early 2004, at the Trustee's request, the bankruptcy court established bidding procedures for sale of the stores. Quality's bid was the high bid the Trustee received. Pursuant to Quality's bid, the Trustee executed an asset purchase agreement and conveyed the Jonesborough store to a subsidiary of MEO and the Bristol store to Quality on June 29, 2004. As required by the bankruptcy court's order approving the sale, the Trustee's deeds of conveyance were "free and clear of liens, claims, rights, and interests."

B.

In November 2004, the Trustee brought an adversary proceeding in the bankruptcy court against MEO, Quality, and a related party seeking recovery of unpaid rent for the period of MEO's pre-sale occupancy of the stores. The Trustee alleged that unpaid rent from October 1, 2002, through June 28, 2004, was an asset of the bankruptcy estate. Further, the Trustee pled that an amount equal to the daily rent set out in the purchase contract between Lambert and Quality and similarly under the management agreement between Lambert and MEO was the fair market daily rental value of the possession, use, and occupancy of the stores. MEO did not contest that it owed rent for the pre-sale period (including the pre-bankruptcy, debtor-in-possession, and Chapter 7 timespans), but argued, inter alia, that no agreement on rent was ever reached and that rent thus never accrued. As a consequence MEO contended the rent obligation was an item of real property which passed upon sale by the Trustee to the grantees (MEO's affiliates).

The bankruptcy court found that the amount MEO actually paid Lambert during MEO's use and possession prior to the bankruptcy established the fair market daily rental value for both stores, limited to the $725.56 daily rent actually claimed by the Trustee in his complaint.

6

The fact that MEO as the actual operating business entity was willing to enter into a Management Contract for the term of a year in which it agreed to pay the daily cost of the debt service on the two properties in question in exchange for the right to operate the convenience stores businesses located there and keep whatever excess cash flow resulting therefrom it might be able to generate. is likely as good evidence as a court is likely to get that, at least in the case of these two stores, the pro rata daily cost of the debt service upon these two stores was equivalent to the fair rental value of such properties as operating convenience stores businesses.

Callahan v. Mountain Empire Oil Co., Inc. (In re Lambert Oil Co. Inc.), Ch. 7 Case No. 03-01183-WAS, Adv. No. 04-07135, slip op. at 21 (Bankr. W.D. Va. Nov. 24, 2006).

The bankruptcy court determined MEO, the entity in actual possession, was liable to the Trustee for the unpaid rent and pre-judgment interest. The court also ruled that the Trustee's conveyance of the stores free and clear of all liens, claims, and interests did not absolve MEO of liability for its pre-sale rental obligation.

MEO appealed to the United States District Court, which affirmed the judgment of the bankruptcy court. MEO now brings this appeal.

II.

MEO's brief enumerates twenty issues on appeal, the gist of which boil down to three: (1) whether the bankruptcy court erred in finding MEO liable to the Trustee, either because the conveyance of the properties extinguished all pre-sale liability

7

from MEO or because there was never an agreement between the parties that MEO was liable for rent;[2] (2) whether the bankruptcy court erred because the evidence was insufficient to establish the amount of fair market daily rental value for both stores, either because the management agreement was ineffectual, applied only to the Jonesborough store, or failed to properly reflect any rental value;[3] and (3) whether the bankruptcy court erred in failing to find that any liability for rent by MEO was abrogated under 11 U.S.C. § 365.[4] [5]

---

[2] Issues 2, 4, 7, 12, and 15.

[3] Issues 3, 5, 6, 7, 8, 9, and 18.

[4] Issue 19.

[5] In Issues 1, 10, 11, 13, 14, 16, 17, and 20 MEO contends among other things that the court erred in finding that the rent obligation accrued daily, in finding that MEO was not entitled to credit against its rent liability for payments paid under the management agreement, in allowing the Trustee's expert to testify, in taking judicial notice of certain facts, and in awarding pre-judgment interest. However, MEO failed to supply any legal argument supporting its position on these issues. Accordingly, we consider these issues waived. See 11126 Balt. Boulevard v. Prince George's County, 58 F.3d 988, 993 n.7 (4th Cir. 1995), *abrogated on other grounds by*, City of Littleton v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774 (2004); see also Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) ("A party 'waives an issue if he fails to adequately brief it.'"); United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006) ("We may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived."); Travitz v. N.E. Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

On appeal from the district court, we review the judgment of the bankruptcy court directly; we review findings of facts for clear error and legal conclusions de novo. Spence v. Educ. Credit Mgmt. Corp., No. 06-2114, slip op. at 8 (4th Cir. July 30, 2008); Bowers v. Atlanta Motor Speedway, Inc., 99 F.3d 151, 154 (4th Cir. 1996).

A.

MEO concedes that it used and possessed both stores between October 2002 and June 2004, the period for which rent was awarded, but contends that no evidence provided a basis for the bankruptcy court's determination that a rent payment obligation had accrued at the time the stores were conveyed by the Trustee. In MEO's view, because no payment obligation had accrued, any right to collect the rent for MEO's prior use and possession was a real property right that passed to the grantees (MEO's affiliates) when the Trustee conveyed the real property. We disagree.

The use and possession of the real property of another creates a contract implied at law under the law of both Tennessee and Virginia. Raven Red Ash Coal v. Ball, 39 S.E.2d 231, 237 (1946); Avent v. Hord, 40 Tenn. (3 Head) 458, 461 (1859). Thus, MEO's liability for use and possession arises independently from the pre-bankruptcy purchase contract and

9

management agreement.  Once accrued, the right to collect rent for such use and occupation is not an item of real property which passes to the grantee when the real property is conveyed but remains personal property owned by the grantor (the Trustee in this case).  See White v. Pleasants, 317 S.E.2d 489, 493 (1984); see also E.T., Ga. & Va. R.R. v. Henderson, 69 Tenn. (1 Lea) 1, 3 (1878) (a right to recover on contract is a chose in action); Sharp v. Cincinnati, N.O. & T.P.R. Co., 179 S.W. 375, 376 (1915) (chose in action is personalty).  Therefore, MEO was liable for rent to the Trustee if the rent obligation had accrued.

In determining whether MEO's rent obligation had accrued, the bankruptcy court looked first to the pre-bankruptcy purchase contract and the management agreement but found no provision in either instrument for the intervals at which the required payments were to be paid.  However, the court found that "the liability for rent 'accrued' daily," and turned to the practice of the parties during the occupancy of the stores, particularly for the period in which MEO tendered payment to Lambert.  Those payments were tendered monthly in arrears.  Thus, the bankruptcy court held:

> the proper rule to apply for that period of time following the termination or effective abandonment of the contract by the parties was the same one applicable to a tenant who enters into possession and pays rent under an invalid lease, which thereby

10

> creates a periodic tenancy with the period of tenancy being determined by the interval between rental payments.

Callahan, slip op. at 18.

While MEO's liability for use and possession of the stores arises independently from the pre-bankruptcy management agreement and purchase contract, those instruments and the conduct of the parties thereunder are nevertheless informative on the question of when the right to collect rent accrued. The management agreement clearly provided that "[d]uring each day of the term of this Contract, MEO shall pay" and the pre-bankruptcy purchase contract clearly provided for "daily rent." The Trustee submitted uncontested evidence that MEO made six payments, one each in May, June, July, August, September, and October 2002, ostensibly for the preceding month of use and possession. Accordingly, there is adequate evidentiary support for the bankruptcy court's factual findings that MEO's rent obligation accrued daily and was paid monthly in arrears. There is no clear error in these findings. Consequently, the bankruptcy court correctly concluded, as a matter of law, that the accrued rent was personal property, which remained an asset of the bankruptcy estate, and was not a part of the real property conveyed by the Trustee.

The bankruptcy court did not err in further holding that the terms of conveyance of the real property by the Trustee

11

"free and clear of any liens, claims, or interests" had no effect on MEO's accrued rental obligation.

> Such language has nothing to do with liability for use and occupation of these stores by any of the purchasers prior to the sale . . . . In short, the language of this Court's Order pursuant to the Trustee's Motion provided the same protection to Quality and MEO as any purchaser of the stores from liabilities associated with acquisition of ownership of the properties, but did not release them from liability for their own pre-sale enjoyment of the economic benefits flowing from their operation of the convenience store businesses at the subject locations.

Callahan, slip op. at 24-25.

This conclusion is further supported by the specific exclusion of any relief from indebtedness for MEO's occupancy and possession of the stores in the Trustee's asset purchase agreement.

> The foregoing exclusion of liability is applicable only to the liabilities of . . . Lambert Oil Company's ownership or occupancy of the Purchased Assets and shall not operate as a discharge or release of any liability incurred by the Purchaser as a result of the Purchaser's occupancy and use of the Purchased Assets.

The bankruptcy court did not err in determining that MEO was liable to the Trustee in rent for the two stores from October 2002 through June 2004.

B.

MEO next contends that, even if liable to the Trustee for rent, the evidence was insufficient to support the bankruptcy court's award of $462,181.72. We disagree.

While the bankruptcy court considered the testimony of the Trustee and the Trustee's expert witness, it ultimately relied on the actual conduct of the parties during the occupancy and use of the stores to establish the rental value. The payments made by MEO supporting a finding that the fair market daily value for use and possession of the stores was $732.19 from the actual conduct of the two independent parties engaged in an arm's length transaction. We therefore find no clear error in the bankruptcy court's finding that the fair market daily rental value of the two stores was $725.56, the amount pled by the Trustee in his complaint, or in the resulting cumulative award of rent.

C.

Lastly, MEO contends any liability derived from the pre-bankruptcy purchase contract or management agreement was abrogated when neither Lambert, as debtor-in-possession, nor the Trustee assumed the contracts, thereby effecting a rejection of the agreements by operation of 11 U.S.C. § 365. The bankruptcy court correctly determined that the statute applies "to any

13

'unexpired' lease," and, as no lease was in effect at the time the bankruptcy petition was filed, the statute could not apply to expired pre-bankruptcy agreements as a matter of law.

Moreover, as noted above, MEO's liability to pay rent arises out of the contract implied at law from its use and possession of the two stores before and during the bankruptcy, not the pre-bankruptcy agreements.

> The fact that the two written contracts had either expired or failed according to their terms long before bankruptcy transpired cannot alter the facts that the parties had agreed and acted upon a specific rate of compensation for the use, occupancy and enjoyment of the Bristol and Jonesborough stores during a period of time and MEO remained in actual possession of such properties thereafter without any express agreement as to the terms and conditions therefore and without any compulsion to do so other than its own financial self-interest.

Callahan, slip op. at 27.

Accordingly, we affirm the bankruptcy court's holding that 11 U.S.C. § 365 had no effect on MEO's liability for rent.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

14