COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Senior Judge Clements
Argued by videoconference


SARAH K. LEHMANN, ADMINISTRATOR OF
  THE ESTATE OF EMILE LEHMANN, III, ET AL.
                                                        OPINION BY
v.      Record No. 0201-23-2            JUDGE JEAN HARRISON CLEMENTS
                                                        MAY 14, 2024
WFV HOLDINGS, LLC, ET AL.


            FROM THE CIRCUIT COURT OF AMELIA COUNTY
                       Joseph M. Teefey, Jr., Judge

        Michael L. Donner, Sr. (Setliff Law, P.C., on briefs), for appellants.

        Christopher C. Spencer (Franklin R. Cragle, III; Randolph Critzer,
        Jr.; Christopher C. Spencer PLLC; Hirschler Fleischer, P.C., on
        brief), for appellee WFV Holdings, LLC.

        No brief or argument for appellee Betty Carol Moyer.


        By final order of January 6, 2023, the Circuit Court of Amelia County ordered that Sarah K.

Lehmann, administrator of the Estate of Emile Lehmann, III, and Janet Elaine Lehmann Crumpler

each were obligated to pay $23,874.23 of expenses incurred by their co-tenant, WFV Holdings,

LLC, in connection with real property that was the subject of a partition suit.  The circuit court

ordered the clerk to deduct that amount from the proceeds of sale of the real property at issue before

issuing a check to each party for the remainder of that party's share of the proceeds.  Lehmann and

Crumpler challenge the circuit court's judgment, arguing that they should not have been required to

pay any of WFV's expenses because WFV failed to include in its complaint any request for

compensation.

BACKGROUND

Helen Lehmann owned real property in Amelia County. When she died intestate in 2012, her brother, Arthur Lehmann, filed an affidavit declaring that he was her sole surviving heir. In fact, Helen had other heirs, including Emile, Crumpler, Betty Carol Moyer, and Linda Ann Biggerstaff.[1] Subsequently, Arthur conveyed his interest in the property to WFV by deed of December 14, 2017.

On April 9, 2020, WFV filed a complaint for partition of real estate. *See* Code §§ 8.01-81 to -92 (governing actions for partition). On April 10, 2020, Emile and Crumpler filed a complaint for partition of three of the same parcels. Their complaint asked the circuit court to partition the properties and order any defendant who had received "rents and profits" from the properties "without paying the plaintiffs their ratable share of the same" to pay them "their portions of the rents and profits thus obtained."

WFV moved for leave to file a first amended complaint on May 12, 2020, and on May 20, 2020, for leave to file a second amended complaint. The circuit court granted both motions by order of June 4, 2020. WFV's second amended complaint asked for partition of the three parcels that were the subject of Emile and Crumpler's complaint. The second amended complaint alleged that the co-tenants were unable to "agree as to the sale, division, or use of the properties" and asked the circuit court to determine boundary lines, identify and determine the percentage interests of any co-tenants, and partition the properties. The second amended complaint did not include a request for reimbursement of any costs, including attorney fees, WFV incurred in connection with the properties.

---

[1] By order of September 18, 2020, the circuit court found that Moyer and Biggerstaff were in default. By separate order of September 18, 2020, the circuit court found that Biggerstaff was presumed to have predeceased Helen and ordered that the property would be partitioned as though she had predeceased Helen and had no descendant who survived Helen. *See* Code § 64.2-2301. Those rulings are not challenged in this appeal.

The circuit court consolidated the two cases for trial. Emile and Crumpler moved the circuit court to appoint a special commissioner to sell the property. After a hearing, the circuit court found that the parties were tenants in common, WFV owned a 50% interest, Emile and Crumpler each owned a 12.5% interest, and Moyer owned the remaining 25% interest. By order of October 5, 2021, the circuit court appointed a special commissioner to sell the property.

The special commissioner obtained purchase offers totaling $6.16 million and asked the circuit court to approve the sales. By orders of February 20, 2022, and March 31, 2022, the circuit court accepted the purchase offers, ordered the special commissioner to complete the sales, and deferred ruling on the distribution of the proceeds.

WFV thereafter moved the circuit court to distribute the proceeds of the sales and for reimbursement from its co-tenants of various costs, including boundary surveys, appraisals, property taxes, property security, liability insurance, fees for an heir-locator service, and overhead time and costs an employee of WFV incurred in connection with the properties.[2] WFV also sought reimbursement of attorney fees for the special commissioner before his appointment, determining the identity of heirs, and establishing title. WFV identified $101,017.20 in direct costs for the properties and overhead of $121,220.64. In addition, WFV identified $8,896.75 in direct costs it claimed were incurred for security and insurance of the property plus additional parcels that were not at issue in the partition suit and attributed 56.6% of the claimed expenses to the property to be partitioned. WFV also claimed $10,676.10 in overhead for those security and insurance expenses, 56.6% of which it attributed to the property. In total, WFV requested pro rata reimbursement of $233,316.07, comprised of $106,052.76 in direct expenses and $127,263.31 in overhead charges.

_____

[2] WFV also asked that the circuit court order Moyer, who was not represented by counsel of record, to reimburse some of its attorney fees in the partition action, under Code § 8.01-92. Likewise, Emile and Crumpler moved the circuit court under Code § 8.01-92 to order that Moyer pay a portion of their attorney fees in the partition suit. The circuit court's rulings on those issues are not at issue in these appeals.

Emile and Crumpler opposed WFV's motion. They emphasized that WFV's second amended complaint was "limited strictly" to "determining boundary lines," "determining who the co-tenants were and their percentage ownership," and "partitioning the property." They asserted that WFV had "not include[d] . . . a request" for reimbursement of any costs. They further argued that Virginia law was clear that WFV was not entitled to any reimbursement that had not been requested in the complaint.

After their argument that caselaw precluded reimbursement because WFV failed to request it in its complaint, Emile and Crumpler then presented their "position on the requested reimbursements" if the circuit court "decide[d] to distinguish" the caselaw. They asserted that the purchaser had reimbursed WFV for the boundary surveys and disputed any obligation to pay for a cost already reimbursed. Emile and Crumpler agreed that WFV could be reimbursed its expenses for appraisals, the "timber cruise," trash removal, property taxes, and "14 signs," "one gate," and "one lock" for the "*jointly owned*" property. In total, Emile and Crumpler agreed that $35,084.56 would be reimbursable if the circuit court rejected their argument; in accordance with their 12.5% respective interests in the property, each would owe $4,385.57.[3] They objected on various grounds to WFV's request for reimbursement of all other costs, including attorney fees.

WFV replied to Emile and Crumpler's opposition, denying that a "complaint for partition must include a request for reimbursement" but moving for leave to amend its complaint to include a request for reimbursement if "such a request is required." WFV did not include a proposed amended complaint with its motion, and the circuit court did not rule on the motion.

---

[3] Emile and Crumpler's brief calculated 12.5% of each item they agreed would be reimbursable if the circuit court rejected their argument that WFV's failure to plead a request for reimbursement in its complaint barred reimbursement of any costs. Their brief stated an incorrect total of $5,467.39.

The circuit court conducted an evidentiary hearing on July 29, 2022, on WFV's motion for reimbursement.[4] WFV's executive director testified about the expenses for which WFV sought reimbursement. Crumpler's counsel stated that he had conceded on her behalf that the property taxes paid by WFV were "proper and should be regularly charged" to the co-tenants and he "anticipate[d]" making the same concession on behalf of the administrator of Emile's estate once that appointment occurred. WFV presented testimony from an expert witness who opined that the attorney fees WFV had incurred were "within the range of reasonableness."

By order of November 10, 2022, the circuit court granted a motion to substitute Sarah Lehmann, the administrator of Emile's estate, as a party. The circuit court conducted a second evidentiary hearing on November 18, 2022. WFV presented evidence about $98,839.49 in overhead costs for which it requested reimbursement.[5] At the conclusion of the evidence, the circuit court deferred ruling on the motion pending receipt of additional written argument from the parties. WFV submitted a brief in support of its motion. Lehmann and Crumpler did not submit any additional briefs.

After considering the evidence and argument of the parties, the circuit court found that the property had been sold and the proceeds deposited with the circuit court clerk's office. It also found that WFV had "incurred costs" in "establish[ing] the value" and "facilitat[ing] the sale of" the property through boundary surveys, appraisals, and the "[t]imber [c]ruise." Moreover, the circuit

---

[4] Emile died on July 21, 2022, and a personal representative of his estate had not been appointed when the hearing occurred. The circuit court denied a motion to continue the hearing and ruled that the hearing would proceed and then be adjourned until Emile's estate had a personal representative, the witnesses would be subject to recall, and the personal representative would be allowed to put on evidence later.

[5] The record does not contain an explanation for the difference between the $127,263.31 in overhead costs for which WFV initially sought reimbursement, as reflected in a spreadsheet attached to its motion, and the $98,839.49 identified in an exhibit admitted at the November 18, 2022 hearing.

court found that Lehmann and Crumpler had "concede[d] that they should contribute to those costs." The circuit court also found that WFV had paid the special commissioner for work before he was "officially appointed" and incurred other "legal fees and costs" that "inured to the benefit of" Lehmann and Crumpler, but that $17,759.63 in attorney fees were not reimbursable because they were unrelated to the partition. Further, the circuit court found that the heir-locator fees "led to an increase" of the interest in the partitioned property enjoyed by the co-tenants and the title services "contributed to the sale value of the land," thereby benefitting the co-tenants. The circuit court also found that WFV incurred management costs that "maintained and improved the value of the partitioned property," paid property taxes, incurred costs for security and insurance to maintain the property's value and "mitigate risks to the parties," which benefitted the co-tenants. The circuit court found that Lehmann and Crumpler had "conceded that they should contribute to" the property tax payments. Regarding WFV's claimed overhead expenses, the circuit court found that WFV had "incurred expenses and costs and diverted resources," in the full amount detailed in the spreadsheet that was admitted at the November 18, 2022 hearing, by which WFV "maintained, enhanced, and facilitated the partition of the property." Finally, the circuit court found that the reimbursable expenses totaled $190,993.81, the full amount requested less the $17,759.63 in disallowed attorney fees.

By order of January 6, 2023, the circuit court ordered that Lehmann and Crumpler each were obligated to pay 12.5%, or $23,874.23, of the reimbursable expenses. The circuit court ordered the clerk to deduct that amount from the sales proceeds due to each party. Lehmann and Crumpler appeal.

ANALYSIS

On appeal, Lehmann and Crumpler argue that the circuit court erred by awarding WFV reimbursement of costs despite WFV's failure to request reimbursement in its complaint. They also

challenge the circuit court's findings that they conceded that they were obligated to reimburse WFV for certain costs.

Under settled principles of appellate review, when an appellant's assignments of error require that we interpret caselaw, the question is one of law that we review de novo. *Young v. Commonwealth*, 70 Va. App. 646, 652-53 (2019). If an appeal presents a mixed question of law and fact, "[w]e must afford deference to the trial court's factual findings, but we review de novo its application of the law to the facts." *Ferguson v. Stokes*, 287 Va. 446, 450 (2014).

Code § 8.01-81 provides a cause of action for "[t]enants in common, joint tenants, . . . and coparceners" to compel partition of real property. Under Code § 8.01-31, a "joint tenant, tenant in common, or coparcener" may bring an action for an accounting in equity against another co-tenant who has "receiv[ed] more than comes to his just share or proportion." These provisions appear in different articles of Chapter 3 ("Actions") in Title 8.01 ("Civil Remedies and Procedure"). The provisions governing an accounting in equity appear in Article 2 ("Actions on Contracts Generally"), whereas those governing partition are found in Article 9 ("Partition").

It is well-established that the "basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought." *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 69 (2021) (quoting *Allison v. Brown*, 293 Va. 617, 626 (2017)). Moreover, "[e]very litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense." *Id.* (quoting *Allison*, 293 Va. at 626). Therefore, a court may not "base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed." *Id.* (quoting *Allison*, 293 Va. at 626).

In partition suits, "a joint tenant is usually entitled to compensation for permanent improvements he has made to the property." *Quillen v. Tull*, 226 Va. 498, 502 (1984). "If a tenant

- 7 -

desires compensation for enhancement, he must request it in his pleadings; if, however, the parties' testimony treats permanent improvements as calling for compensation, a specific pleading is unnecessary." *Id.* at 502-03 (citing *Griffin v. Tomlinson*, 159 Va. 161, 178-79 (1932) (holding that "a cotenant who in a partition suit seeks equitable compensation for improvements which he claims to have made upon the common property, must specifically plead his claims therefor," except when the parties treat the improvements "in their testimony" as ones for which a cotenant "is entitled to equitable compensation")). Additionally, "the amount of the compensation, in the absence of an agreement with the other tenant or tenants, is limited to the amount by which the value of the property owned in common has been enhanced by the improvement." *de Benveniste v. Aaron Christensen Fam., LP*, 278 Va. 317, 323 (2009) (quoting *Jones v. Jones*, 214 Va. 452, 455 (1974)).

Thus, in *Quillen*, the trial court awarded Tull "a credit for enhancement in value by improvements he made." *Quillen*, 226 Va. at 499. Tull had purchased two easements to allow access to parcels that were inaccessible otherwise. *Id.* at 501-02. The trial court ruled after an evidentiary hearing that the easements were appurtenant to the parcels in question, contrary to Tull's apparent belief that they were easements in gross. *Id.* at 502. At a second evidentiary hearing on the issue of enhancement in value, witnesses for the parties testified concerning the value of the properties with and without the easements. *Id.* at 501-02. On appeal, Quillen argued that the plaintiffs had not pleaded "enhancement and that Tull explicitly claimed that the easements were not appurtenant" to the parcels in question. *Id.* at 503. The Supreme Court emphasized that the second evidentiary hearing occurred "after the [trial] court ruled that the easements were appurtenant" and "deal[t] specifically with the question of enhancement." *Id.* Thus, the Court held, the parties treated the improvements as calling for compensation and Tull was not required to have pleaded the issue of enhancement. *Id.* The trial court therefore had "properly considered enhancement." *Id.*

- 8 -

For more than 100 years, in cases in which our Supreme Court has considered compensation for permanent improvements in a partition suit among co-tenants, the requesting party presented the issue of compensation to the trial court and the opposing party *before* the trial court ruled on the partition.[6] Virginia maintains a "notice pleading regime." *Allison*, 293 Va. at 624. Thus, "[e]very pleading must state the facts on which the party relies in numbered paragraphs, and it is sufficient if it clearly informs the opposite party of the true nature of the claim or defense.'" Rule 1:4(d). "Stated another way, a pleading must be 'drafted so that [the] defendant cannot mistake the true nature of the claim.'" *Allison*, 293 Va. at 624 (alteration in original) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)). Although our Supreme Court has not established a rule that the issue of compensation for enhancements must be raised before the circuit court rules on the underlying partition, we believe such a rule comports with these cases and the requirements of our pleading system.

Here, WFV's complaint for partition informed the opposing parties that WFV wanted partition but did not place them on notice that it also wanted compensation for enhancement.

---

[6] *See, e.g.*, *de Benveniste*, 278 Va. at 322 (evidence of enhancement in value presented before the trial court ordered partition); *Butler v. Hayes*, 254 Va. 38, 42 (1997) (requested in answer to complaint for partition); *Gaynor v. Hird*, 15 Va. App. 379, 382 (1992) (commissioner made findings before partition regarding the existence and value of permanent improvements); *Quillen*, 226 Va. at 502 (court partitioned the property after receiving evidence on enhancements to the property and the increase in value they produced); *Jones v. Jones*, 214 Va. 452, 452-53 (1974) (requested in bill, amended bill, and supplemental bill of complaint, and the defendants countered with requests of their own in their answers); *Jenkins v. Jenkins*, 211 Va. 797, 798 (1971) (requested in cross-bill); *Shotwell v. Shotwell*, 202 Va. 613, 614-15, 617 (1961) (the commissioner in chancery, directed by the court to inquire and report on certain items, received evidence regarding improvements, before the court partitioned the property); *Dalgarno v. Baum*, 182 Va. 806, 807 (1944) (requested in answer and cross-bill); *Roark v. Shelton*, 169 Va. 542, 543 (1938) (requested in cross-bill); *Griffin*, 159 Va. at 178-79 (requested in answers of two co-tenants); *Ballou v. Ballou*, 94 Va. 350, 351 (1897) (a commissioner in chancery established the improvements' value before the trial court ordered partition). *See also Rutledge v. Rutledge*, 204 Va. 522, 531 (1963) (reversing judgment because appellees did not plead entitlement to compensation for "the permanent improvements they made on the land, nor was there any evidence before the commissioner" about the value of any improvements and the amount of the judgment came from outside the records, and thus was "clearly erroneous").

WFV did not plead in its original, first amended, or second amended complaint any request for compensation of expenses it had incurred in improving the property at issue in its partition suit, or any request for an accounting. WFV did not identify in its complaints any efforts or expenditures it had made related to the property, or any enhancement of the property's value created by its efforts or expenditures. Indeed, the circuit court partitioned the property long before WFV requested compensation. The circuit court appointed a special commissioner in chancery to effect a partition by sale by order of October 5, 2021. By orders of February 20, 2022, and March 31, 2022, the circuit court ratified the special commissioner's reports, it accepted the purchase offers, and it ordered the special commissioner to complete the sales as confirmed. However, WFV did not raise the issue of compensation until July 14, 2022, months after the partition had been completed. In short, WFV did not move for compensation within the time for responsive pleadings or any other point before the circuit court ruled on the partition; rather, it waited to move for compensation until several months after the object of its suit, as stated by the pleadings, had been realized in the partition by sale.

Furthermore, before the hearings on WFV's request for reimbursement of its expenses, the circuit court had not ruled that WFV had enhanced the property in any way. By contrast, in *Quillen*, the trial court had ruled that the easements were appurtenant to the property before the parties' testimony concerning the enhancement in value created by the easements, thus placing compensation for enhancement at issue. 226 Va. at 501-02. In addition, the testimony about WFV's expenses came solely from WFV's witnesses; indeed, Lehmann and Crumpler presented no witness testimony at either evidentiary hearing. Thus, unlike in *Quillen*, Lehmann and Crumpler did not treat WFV's claimed expenses "as calling for compensation." *Id.* at 502. Therefore, the testimony exception did not apply to relieve WFV from the requirement that a plaintiff who "desires compensation for enhancement . . . must request it in his pleadings." *Id.* WFV was thus required to

include in its complaint, or other pleading filed before the partition, its request for compensation but did not do so and therefore was not entitled to compensation.[7]

Nor does the circuit court's finding that Lehmann and Crumpler conceded that certain costs were reimbursable excuse WFV's failure to plead the compensation request. No witness testified for Lehmann and Crumpler, and therefore the circuit court could have found concessions only in briefs filed or statements made on their behalf. But it is clear from the record that any "concessions" made by Lehmann and Crumpler were presented as arguments in the alternative to their principal argument that WFV could not recover any expenses because it had not requested reimbursement in its complaint.

Their brief opposing WFV's motion first presented the argument that WFV's failure to request reimbursement in its complaint barred reimbursement of *any* costs. Lehmann and Crumpler then presented their positions on the reimbursable nature of the costs, stating that they did so only because of the possibility that the circuit court might reject the caselaw that they argued barred any reimbursement. The brief contained a section with a heading, "[l]egitimate [c]harges the defendants concede are reimbursable." Despite that heading, Lehmann and Crumpler disputed the reimbursable nature of most of the items, including expressly rejecting any obligation to pay for

---

[7] Although WFV argues that "[a]ll motions in writing . . . are pleadings," *see* Rule 3:18(a), the Code and other Rules treat motions as distinct from pleadings. *See* Code § 8.01-271.1 (providing that "every pleading, motion, or other paper of a party . . . shall be signed"); Rule 1:5(a) ("If a pleading, motion, or other paper is not signed in compliance with Code § 8.01-271.1(A), it is defective."); Rule 1:4(l) (requiring "[e]very pleading, motion or other paper served or filed" to contain certain information). These distinctions would be superfluous if Rule 3:18(a) meant that a motion always is a pleading for all purposes. Given our conclusion that compensation must be brought into issue before the circuit court rules on the partition, we do not need to decide in this case whether a motion requesting compensation for enhancements can satisfy the requirement to plead such a request. *See Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (noting that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))); *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("The 'narrowest' answer to a legal question is the one affecting the least number of cases.").

liability insurance or fees for attorneys, heir location, or title. They conceded that four specific charges would be reimbursable to WFV: "two appraisals and the timber cruise," trash removal, "the property taxes claimed in" WFV's motion, and "14 signs," "one gate," and "one lock" for the *jointly-owned* property. At the evidentiary hearing on the motion, their counsel stated that he *had* conceded "that the property taxes are proper."

"A party asserting either a claim, counterclaim, cross-claim, or third-party claim or a defense may plead alternative facts and theories of recovery . . . . A party may also state as many separate claims or defenses as he has regardless of consistency . . . ." Rule 1:4(k); *see* Code § 8.01-281 (allowing for alternative pleading). The record makes clear that the concessions on which the circuit court relied were made as part of arguments in the alternative to their overarching contention that no expense was recoverable unless it had been pled in the complaint. The brief expressly stated that the appellants were presenting their positions on the expenses "[i]f the [c]ourt decide[d] to distinguish . . . the long line of cases" supporting that argument. The statement by their counsel at the hearing could only have referred to the concessions in the brief in opposition to the motion, and therefore his statement simply reiterated the brief's alternative argument on costs if the circuit court disregarded the caselaw that required WFV to have requested reimbursement in its complaint. Thus, the concessions that specific charges were reimbursable, while others were not, were not unqualified concessions upon which the circuit court could base a reimbursement award in the absence of a request for reimbursement in the complaint. Instead, they were arguments in the alternative to Lehmann and Crumpler's primary argument that WFV could not recover *any* of its requested expenses because it had failed to plead reimbursement in its complaint.

Nonetheless, and despite the clear and unequivocal argument by Lehmann and Crumpler that WFV could not recover any expenses, the circuit court found that WFV had incurred costs and Lehmann and Crumpler "concede[d] that they should contribute to" some of those costs. Based on

those findings, the circuit court awarded WFV reimbursement for all its requested costs except for one set of attorney fees. In so doing, the circuit court erred. *See, e.g.*, *Henderson v. Henderson*, 255 Va. 122, 127 (1998) (explaining that a litigant's "unequivocal" statements "against his own interest" about "facts within his knowledge" "have the effect of judicial admissions" but must be considered in the "context of the litigant's entire testimony"); *see also Quillen*, 226 Va. at 502 ("If a tenant desires compensation for enhancement, he must request it in his pleadings; if, however, the parties' testimony treats permanent improvements as calling for compensation, a specific pleading is unnecessary.").

"Finding an error by the court does not end our inquiry, however. When this Court finds that error has been committed by a trial court, we are required to consider whether the error was harmless." *Milam v. Milam*, 65 Va. App. 439, 459 (2015). "[H]armless-error review [is] required in *all* cases." *Moore v. Joe*, 76 Va. App. 509, 517 (2023) (second alteration in original) (quoting *Spruill v. Garcia*, 298 Va. 120, 127 (2019)). "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Id.* at 516-17 (alteration in original) (quoting Code § 8.01-678). "In considering whether an alleged error was harmless, the error must be considered 'in the context of the entire case.'" *Mall Amusements, LLC v. Va. Dep't of Alcoholic Beverage Control*, 66 Va. App. 605, 618 (2016) (quoting *Montgomery v. Commonwealth*, 56 Va. App. 695, 704 (2010)). Here, the circuit court erroneously found that Lehmann and Crumpler had conceded that they should reimburse WFV and then relied on those erroneous findings in ordering the deduction of the reimbursement from their share of the sale proceeds despite the failure of WFV to request reimbursement in its complaint. Thus, we cannot find that it "plainly appears" that Lehmann and Crumpler "had a fair trial on the merits," so the circuit court's error was not harmless. *Moore*, 76 Va. App. at 517 (quoting Code § 8.01-678).

- 13 -

CONCLUSION

For the foregoing reasons, we reverse the circuit court's judgment and remand to reimburse Lehmann and Crumpler the amounts the circuit court deducted from their respective shares of the sales proceeds.[8]

*Reversed and remanded.*

---

[8] On brief, WFV asserts that it "has assigned cross-error to the circuit court's failure to allow such an amendment." WFV argues that if we reverse, we should remand to allow the circuit court to consider its motion to amend the complaint. A brief assigning cross-error must contain a "statement of the assignment of cross-error, with a clear and exact reference to the pages of the appendix where the alleged cross-error has been preserved," along with the "standard of review, the argument, and the authorities relating to each assignment of cross-error," which must be "stated in one place and not scattered through the brief." Rule 5A:21(e). WFV's brief does not comply with the requirements of Rule 5A:21(e); therefore, we do not consider WFV's request that we include in our mandate upon remand a directive that the circuit court consider WFV's motion for leave to amend.